[949 NE2d 952, 926 NYS2d 4]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN LINGLE, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN PARISI, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DOMINIQUE MURRELL, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN PRENDERGAST, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MANUEL RODRIGUEZ, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARRYL SHARLOW, Appellant.

Argued March 21, 2011; decided April 28, 2011

622

624

---

**POINTS OF COUNSEL**

*Center for Appellate Litigation*, New York City (*Jonathan M. Kirshbaum* and *Robert S. Dean* of counsel), for appellant in the first above-entitled action. I. State and federal double jeopardy barred the resentencing court from imposing postrelease supervision on appellant, who had already served more than five years of his sentence at the time of resentencing. (*North Carolina v Pearce*, 395 US 711; *United States v DiFrancesco*, 449 US 117; *United States v Fogel*, 829 F2d 77; *People v*

*Williams*, 14 NY3d 198; *Stewart v Scully*, 925 F2d 58; *Breest v Helgemoe*, 579 F2d 95; *Bozza v United States*, 330 US 160; *Williams v Travis*, 143 F3d 98; *People v Williams*, 87 NY2d 1014; *People v Momplaisir*, 2 AD3d 320.) II. A court conducting a postrelease supervision resentencing has the authority to exercise its own independent discretion to reconsider the term of imprisonment of the original determinate sentence upon imposing postrelease supervision. (*People v Catu*, 4 NY3d 242; *People v Sparber*, 10 NY3d 457; *Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *People v Perry*, 36 NY2d 114; *People v Sturgis*, 69 NY2d 816; *People v Stroman*, 36 NY2d 939; *People v Kuey*, 83 NY2d 278; *Matter of Murray v Goord*, 1 NY3d 29; *People v Martinez*, 136 AD2d 745; *People v Desulma*, 26 AD3d 443.) III. The Appellate Division had the power to reduce the sentence in the interest of justice because this was an appeal of a sentence as of right under CPL 450.10 (2) and 450.30 (1) and (3). (*People v Delgado*, 80 NY2d 780; *People v Rivera*, 5 NY3d 61; *People v Pollenz*, 67 NY2d 264; *People v Sparber*, 10 NY3d 457; *People v Rodriguez*, 73 AD3d 541, 15 NY3d 855; *People v Lopez*, 6 NY3d 248.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Vincent Rivellese* and *Patrick J. Hynes* of counsel), for respondent in the first above-entitled action. The trial judge's correct imposition of the legal sentence he always intended to impose should be affirmed. (*Earley v Murray*, 451 F3d 71; *People v Sparber*, 10 NY3d 457; *People v Hernandez*, 59 AD3d 180; *People v Williams*, 14 NY3d 198; *Bozza v United States*, 330 US 160; *United States v DiFrancesco*, 449 US 117; *United States v Rosario*, 386 F3d 166; *United States v Fogel*, 829 F2d 77; *People v Minaya*, 54 NY2d 360; *Strickland v Washington*, 466 US 668.)

*Legal Aid Society of Suffolk County, Inc., Appeals Bureau*, Riverhead (*Kirk R. Brandt, Robert C. Mitchell, Robert L. Cicale* and *Alfred J. Cicale* of counsel), for appellant in the second above-entitled action. In view of the fact that a period of 74 months and 20 days had elapsed from the time the original sentence was imposed on defendant, and cognizant of a time delay of such magnitude in addressing a corrective sentence, the resentencing court lacked both jurisdiction and authority over defendant and, as such, the imposition of the mandatory five-year period of postrelease supervision on the determinate sentences previously decreed violated fundamental fairness and due process and constituted an illegal sentence. (*People v Williams*, 14 NY3d 198; *Hawkins v Freeman*, 195 F3d 732; *DeWitt*

*v Ventetoulo*, 6 F3d 32, 511 US 1032; *Breest v Helgemoe*, 579 F2d 95, 439 US 933; *United States v Lundien*, 769 F2d 981, 474 US 1064; *United States v Cook*, 890 F2d 672.)

*Thomas J. Spota, District Attorney*, Riverhead (*Michael J. Brennan* of counsel), for respondent in the second above-entitled action. The County Court's resentencing of appellant to post-release supervision did not violate fundamental fairness or due process and was, thus, a legal sentence. (*People v Williams*, 14 NY3d 198; *United States v Rourke*, 984 F2d 1063; *United States v Warner*, 690 F2d 545; *United States v Silvers*, 90 F3d 95; *United States v Daddino*, 5 F3d 262; *United States v Arrellano-Rios*, 799 F2d 520; *DeWitt v Ventetoulo*, 6 F3d 32; *United States v Lundien*, 769 F2d 981; *Breest v Helgemoe*, 579 F2d 95; *United States v Cook*, 890 F2d 672.)

*Office of the Appellate Defender*, New York City (*Joseph M. Nursey* and *Richard M. Greenberg* of counsel), for appellant in the third above-entitled action. Dominique Murrell was improperly resentenced to add a term of postrelease supervision, after he had served more than eight years of his sentence and was within two months of release, in violation of the prohibition against double jeopardy and his right to due process of law. (*People v Williams*, 14 NY3d 198; *Benton v Maryland*, 395 US 784; *People v Vasquez*, 89 NY2d 521; *United States v Di-Francesco*, 449 US 117; *Stewart v Scully*, 925 F2d 58; *People v Campanella*, 297 AD2d 642; *People v Trimm*, 252 AD2d 673; *People v Gilchrist*, 231 AD2d 424; *People v Hoppie*, 220 AD2d 528; *People v White*, 292 AD2d 158.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Timothy C. Stone* and *Vincent Rivellese* of counsel), for respondent in the third above-entitled action. The lower court properly resentenced defendant. (*People v Sparber*, 10 NY3d 457; *People v Williams*, 14 NY3d 198; *People v Simms*, 77 AD3d 562; *People v Parisi*, 72 AD3d 989; *People v Becker*, 72 AD3d 1290; *People v Bing*, 76 NY2d 331; *People v Taylor*, 9 NY3d 129; *Stewart v Scully*, 925 F2d 58; *People v Konstantinides*, 14 NY3d 1; *United States v Lundien*, 769 F2d 981.)

*Appellate Advocates*, New York City (*Warren S. Landau* and *Lynn W.L. Fahey* of counsel), for appellant in the fourth above-entitled action. I. The court violated double jeopardy and denied appellant due process when, more than five years after his original sentencing, it added a five-year term of postrelease supervision to his sentence. (*United States v DiFrancesco*, 449 US 117;

*People v Williams*, 14 NY3d 198; *United States v Lundien*, 769 F2d 981, 474 US 1064; *People v Sparber*, 10 NY3d 457; *People v Wright*, 56 NY2d 613; *Ex parte Lange*, 18 Wall [85 US 163]; *North Carolina v Pearce*, 395 US 711; *People v Biggs*, 1 NY3d 225; *Stewart v Scully*, 925 F2d 58; *United States v Fogel*, 829 F2d 77.) II. The resentencing court erroneously failed to recognize its authority and obligation to revisit the term of imprisonment of the original sentence and consider the appropriateness of appellant's sentence as a whole. (*People v Sparber*, 10 NY3d 457; *United States v Rourke*, 984 F2d 1063; *People v Catu*, 4 NY3d 242; *People v Kuey*, 83 NY2d 278; *People v Martinez*, 136 AD2d 745; *People v Desulma*, 26 AD3d 443; *People v Bibbs*, 17 AD3d 170; *People v Wiggins*, 17 AD3d 196; *People v Lucks*, 91 AD2d 896; *People v Green*, 54 NY2d 878.)

*Richard A. Brown, District Attorney*, Kew Gardens (*Anastasia Spanakos* and *John M. Castellano* of counsel), for respondent in the fourth above-entitled action. I. Defendant's resentencing to correct his illegal sentence did not violate double jeopardy or due process. (*People v Williams*, 14 NY3d 198; *People v Sparber*, 10 NY3d 457; *United States v Rourke*, 984 F2d 1063; *United States v Silvers*, 90 F3d 95; *People v Johnson*, 79 AD3d 1072; *People v Velez*, 79 AD3d 542; *People v Ragbirsingh*, 78 AD3d 738; *People v Young*, 78 AD3d 744; *People v Simms*, 77 AD3d 562; *People v Murrell*, 73 AD3d 598, 15 NY3d 854.) II. The record does not support defendant's claim that the resentencing court believed it had no authority to reconsider the incarceratory part of his sentence, and the ambiguity in the record on this point precludes review here. At any rate, the resentencing court in fact had no such authority, and thus defendant's claim is meritless. (*People v Sparber*, 10 NY3d 457; *People v Yannicelli*, 40 NY2d 598; *People v Damiano*, 87 NY2d 477; *People v Kinchen*, 60 NY2d 772; *People v Phelps*, 74 NY2d 919; *People v McLean*, 15 NY3d 117; *United States v Pridgeon*, 153 US 48; *Stewart v Scully*, 925 F2d 58; *Adams v United States*, 375 F2d 635; *People v Richardson*, 100 NY2d 847.)

*Center for Appellate Litigation*, New York City (*Claudia S. Trupp* and *Robert S. Dean* of counsel), for appellant in the fifth above-entitled action. I. The Appellate Division has greater authority than the trial courts to review sentences and properly exercised its interest of justice review power to reduce Mr. Rodriguez's sentence in his appeal as of right under CPL 450.10 (2) and 450.30 (1) and (3). (*People v Delgado*, 80 NY2d 780; *People v Thompson*, 60 NY2d 513; *People v Rivera*, 5 NY3d 61;

*Judson v Central Vt. R.R. Co.*, 158 NY 597; *People v Rosenthal*, 305 AD2d 327; *People v Suitte*, 90 AD2d 80; *People v Pollenz*, 67 NY2d 264; *People v Williams*, 6 NY2d 193; *People v Evans*, 94 NY2d 499.) II. A judge conducting a postrelease supervision (PRS) resentencing has the authority to exercise his independent discretion in determining an appropriate sentence and is not limited to merely pronouncing a term of PRS without considering the propriety of the entire sentence, including the prison term. (*People v Sparber*, 10 NY3d 457; *People v Catu*, 4 NY3d 242; *Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *People v DeValle*, 94 NY2d 870; *People v Wright*, 56 NY2d 613; *People v Minaya*, 54 NY2d 360; *People v Sturgis*, 69 NY2d 816; *People v Stroman*, 36 NY2d 939; *People v Richardson*, 100 NY2d 847; *People v Samms*, 95 NY2d 52.) III. State and federal double jeopardy and due process principles barred the resentencing court from imposing postrelease supervision on Mr. Rodriguez, who had already served more than six years of his sentence at the time of resentencing. (*North Carolina v Pearce*, 395 US 711; *United States v DiFrancesco*, 449 US 117; *United States v Fogel*, 829 F2d 77; *People v Williams*, 14 NY3d 198; *Stewart v Scully*, 925 F2d 58; *Breest v Helgemoe*, 579 F2d 95; *Bozza v United States*, 330 US 160; *Williams v Travis*, 143 F3d 98; *People v Williams*, 87 NY2d 1014; *People v Momplaisir*, 2 AD3d 320.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Richard Nahas* and *Patrick J. Hynes* of counsel), for respondent in the fifth above-entitled action. Where a resentencing court convened for pronouncement of a defendant's postrelease supervision term is not authorized to modify defendant's prison term, the Appellate Division has no power to modify the prison term on appeal from the resentencing. (*People v Sparber*, 10 NY3d 457; *People v DeValle*, 94 NY2d 870; *People v Wright*, 56 NY2d 613; *People v Minaya*, 54 NY2d 360, 455 US 1024; *People v Acevedo*, 14 NY3d 828; *People v Kuey*, 83 NY2d 278; *People v Yannicelli*, 40 NY2d 598; *People v Harrington*, 21 NY2d 61; *People v Carpenter*, 19 AD3d 730, 5 NY3d 804; *People v LaSalle*, 95 NY2d 827.)

*Charles J. Hynes, District Attorney*, Brooklyn (*Solomon Neubort* of counsel), for appellant in the sixth above-entitled action. The resentencing of defendant for the purpose of adding a mandatory period of postrelease supervision was authorized, because the resentencing occurred before the maximum expiration date of the original sentence. (*People v Williams*, 14 NY3d

198; *People ex rel. Johnson v Warden, Rikers Is. Correctional Facility*, 4 Misc 3d 535, 16 AD3d 183; *Matter of Deal v Goord*, 8 AD3d 769; *People v Melio*, 304 AD2d 247; *People v Crump*, 302 AD2d 901; *People v Sparber*, 10 NY3d 457; *Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *United States v DiFrancesco*, 449 US 117; *United States v Halper*, 490 US 435; *Bozza v United States*, 330 US 160.)

*Legal Aid Society, Criminal Appeals Bureau*, New York City (*Steven J. Miraglia* of counsel), for respondent in the sixth above-entitled action. This Court should reject the People's interpretation of *People v Williams* (14 NY3d 198 [2010]) because it is contrary to everything that opinion stands for. Instead, this Court should, pursuant to *Williams*, vacate the order resentencing appellant to include a period of postrelease supervision.

## OPINION OF THE COURT

READ, J.

In *People v Sparber* (10 NY3d 457 [2008]), we held that defendants subject to postrelease supervision (PRS) have a statutory right under CPL 380.20 and 380.40 for a judge to pronounce the PRS sentence in their presence in open court, and that the remedy when a judge neglects to do this is resentencing to correct the error. Although the facts in these six cases vary, they share two essential features: the judges who sentenced defendants did not pronounce PRS (i.e., they committed a *Sparber* error), and defendants were resentenced to PRS before completion of their originally-imposed sentences of imprisonment. Specifically, defendants John Lingle, John Parisi, Dominique Murrell, John Prendergast and Manuel Rodriguez were still incarcerated when resentenced; defendant Darryl Sharlow was conditionally released from prison after having served six sevenths of his originally-imposed sentence.

Defendants Lingle, Parisi, Murrell, Prendergast, Rodriguez and Sharlow seek upon resentencing to be relieved of their statutory obligation to serve PRS on grounds of double jeopardy and/or due process. Alternatively, defendants Lingle, Prendergast and Rodriguez maintain that resentencing courts have discretion to reconsider the propriety of their sentences as a whole (i.e., both the incarceratory and the PRS components). Defendants Lingle and Rodriguez contend, in addition, that the Appellate Division possesses plenary power to modify their sentences after resentencing in the interest of justice. We reject all these arguments, and thus affirm in *Lingle, Parisi, Murrell, Prendergast* and *Rodriguez*, and reverse in *People v Sharlow*.

## Double Jeopardy

Defendants contend that because they served "significant" or "substantial" portions of their originally-imposed sentences before resentencing, they acquired a legitimate expectation of finality, and, as a result, their cases are not comparable to those where the Double Jeopardy Clause did not bar a greater sentence (*see e.g. Bozza v United States*, 330 US 160 [1947] [defendant resentenced five hours after original sentence imposed]; *Williams v Travis*, 143 F3d 98 [2d Cir 1998] [one week]; *People v Williams*, 87 NY2d 1014 [1996] [one week]). In order to avoid a double jeopardy violation, they continue, resentencing courts may only impose PRS by reducing the incarceratory portion of their sentences such that the incarceratory and PRS components of the resentences, when added together, do not exceed the length of their originally-imposed sentences of imprisonment.

██ Our decision in *People v Williams* (14 NY3d 198 [2010], *cert denied* 562 US —, 131 S Ct 125 [2010]) defeats defendants' double jeopardy argument. We pointed out in *Williams* that defendants are "presumed to be aware that a determinate prison sentence without a term of PRS is illegal" and subject to correction, and therefore "cannot claim a legitimate expectation that the originally-imposed, improper sentence is final for all purposes" (*id.* at 217). Nonetheless, "there must be a temporal limitation on a court's ability to resentence a defendant . . . since criminal courts do not have perpetual jurisdiction over all persons who were once sentenced for criminal acts" (*id.*). Citing federal precedent that we found to be persuasive, we held in *Williams* that an expectation of finality arises for purposes of double jeopardy when a defendant *completes* the lawful portion of an illegal sentence and exhausts any appeal taken (*id.* ["(T)here is a legitimate expectation of finality once the initial sentence has been served and the direct appeal has been completed (or the time to appeal has expired)"]; *see also id.* at 227 [Pigott, J., dissenting] [characterizing majority's "holding" as requiring two conditions for a legitimate expectation of finality to "attach": "the completion of the initial sentence and the completion of the direct appeal or time to appeal" (internal quotation marks omitted)]). The defendants in *Williams* and the cases decided along with it had all completed their sentences (including any discharge on conditional release) before being resentenced. By contrast, the six defendants in these cases

had not yet completed their originally-imposed sentences of imprisonment when they were resentenced to add PRS.[1]

To counter *Williams*, defendants highlight the Second Circuit's decision in *Stewart v Scully* (925 F2d 58 [2d Cir 1991]). Focusing on the "substantial portion" of the originally-imposed indeterminate sentence already served, the court in *Stewart* decided that the petitioner possessed a "legitimate expectation in the finality of his sentence, thus violating the protection against multiple punishments guaranteed by the double jeopardy clause" (*id.* at 58). But Stewart pleaded guilty in exchange for a maximum sentencing exposure of 20 years. Upon subsequently learning that the minimum sentence had to be one third (as opposed to one half) the maximum, the sentencing court increased Stewart's maximum sentence to 24 years. By contrast, these defendants were not caught unaware when a sentencing agreement was changed: defendants Lingle, Parisi, Murrell, Prendergast and Rodriguez were sentenced after trials; defendant Sharlow was sentenced, *"as promised,* to seven years" (dissenting op at 636 [emphasis added]).

Importantly, defendants' suggested rule—that resentencing to PRS should be precluded when a "significant" or "substantial" portion of the originally-imposed sentence of imprisonment has been served—supplies no meaningful standard by which to measure a reasonable expectation of finality. Given the thousands of resentencings—past and future—brought about by *Sparber* errors, our rule in *Williams*, by contrast, promotes clarity, certainty and fairness.

Finally, defendants offer no principled basis for us to go beyond our recent decision in *Williams* and interpret the State Constitution's Double Jeopardy Clause more broadly than its federal counterpart, particularly in light of our other recent decision in *Matter of Suarez v Byrne* (10 NY3d 523, 534 [2008]). True, the Legislature has enacted certain statutes affording broader double jeopardy protection than the Federal Constitution requires, but these laws have nothing to do with sentencing. Indeed, after we handed down *Sparber* the Legislature promptly adopted legislation to allow resentencing as many

---

1. The dissent opines that once Sharlow was conditionally released, he was "entitle[d] . . . to a 'legitimate expectation' that . . . his sentence [was] final for all purposes" (dissenting op at 637). But someone released conditionally knows, almost by definition, that he has not yet paid his full debt to society, whereas someone whose sentence has expired can legitimately think of his punishment as in the past.

defendants as possible to sentences that include PRS (*see* L 2008, ch 141).

## Due Process

Defendants also argue that substantive due process bars their resentencing to PRS. To support a due process claim, they rely principally on the decisions of the First and Fourth Circuits in *Breest v Helgemoe* (579 F2d 95 [1st Cir 1978]), *United States v Lundien* (769 F2d 981 [4th Cir 1985]) and *DeWitt v Ventetoulo* (6 F3d 32 [1st Cir 1993]). These decisions generally apply a multi-factor test to determine when a defendant's expectation that his sentence will remain unchanged has "crystallized" such that resentencing would offend substantive due process (*see Lundien*, 769 F2d at 987). But subsequent decisions by the very same courts have largely abandoned the multi-factor test in favor of a "shocks the conscience" standard (*see Gonzalez-Fuentes v Molina*, 607 F3d 864, 882 [1st Cir 2010] [applying the "shocks the conscience" standard to evaluate substantive due process claims]; *Espinoza v Sabol*, 558 F3d 83, 87 [1st Cir 2009] [describing *DeWitt* as an "extreme case," as the *DeWitt* court itself acknowledged (*see* 6 F3d at 36 [characterizing case as "the very rare exception to the general rule that courts can, after sentence, revise sentences upward to correct errors"])]; *Hawkins v Freeman*, 195 F3d 732, 749 [4th Cir 1999] [holding that *Lundien*'s pronouncements on due process were merely dicta and that the court had failed to engage in the "rigorous historical inquiry" mandated in *Washington v Glucksberg* (521 US 702, 720-721 [1997])]).

The proper substantive due process analysis thus requires a determination, first, as to whether the right at issue is so deeply rooted in this Nation's history and traditions as to be considered fundamental, and, if so, whether the government's action is "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" (*Gonzalez-Fuentes*, 607 F3d at 880 [citation omitted]). Negligence alone is insufficient to "shock the conscience," and in successful due process challenges, there is generally an extreme lack of proportionality inspired by malice or sadism rather than carelessness or excess of zeal (*id.* at 881).

 Even assuming a defendant possesses a fundamental right not to have an illegal sentence revised upward to correct an error, these defendants cannot establish that the government's conduct shocks the conscience. The resentencings merely

imposed statutorily-required sentences. The State was not acting out of malice or sadism, but out of a desire to see that legislatively determined mandatory sentences were actually served. And the State's action was not subjectively or standardlessly directed at particular individuals; rather, it was aimed at an entire category of defendants whose sentences were improperly pronounced. In sum, judged by the "shock the conscience" standard, defendants cannot make out a substantive due process violation.

While defendants fare marginally better under the *DeWitt* standard, they still fall short. *DeWitt* calls for a court to consider multiple factors, including the length of time between the mistake and its attempted correction and whether the defendant contributed to the mistake; the reasonableness of the defendant's intervening expectations; the prejudice resulting from the change; and the government's diligence in seeking the change (6 F3d at 35).

In some of these cases, the lapse of time between the *Sparber* error and its correction at resentencing was several years; in no case did defendants contribute to the mistake. Still, defendants could not have developed a reasonable expectation in a prison sentence without PRS. PRS is statutorily mandated, and defendants are charged with knowledge of the law. They were represented by presumably competent counsel who should have informed them of their exposure to PRS. The Department of Correctional Services informs defendants of the PRS component of their sentences upon their entry into the correctional system (*see e.g.* Correction Law § 803 [6]). Significantly, defendants do not protest that they were actually unaware that PRS would be a component of their sentences.

In short, there is every reason to believe that defendants did, in fact, know that they were subject to PRS long before efforts to resentence them were undertaken. Because defendants are merely being required to serve a part of their sentences of which they were always cognizant, any prejudice resulting from resentencing is de minimis. Moreover, the government has acted diligently to correct *Sparber* errors. Finally, defendants suggest no reason for us to interpret substantive due process more broadly in these circumstances as a matter of state constitutional law.

## Whether a Resentencing Court May Reconsider a Defendant's Sentence at a Resentencing to Correct a *Sparber* Error

█ Defendants read *Sparber* to direct or empower judges to revisit the propriety of a defendant's sentence as a whole—both the incarceratory and PRS components—when resentencing to correct a *Sparber* error. While there is, at least arguably, isolated language in *Sparber* which lends itself to this interpretation (principally, our single use of the word "vacate" in the body of the opinion), this is clearly not what we meant. If it had, in fact, been what we intended, we surely would have expressed an unambiguous holding to this effect rather than risk creating a situation where thousands of *Sparber* resentencings might have to be repeated.

We start with the proposition that a *Sparber* error "amounts only to a *procedural* error, *akin to a misstatement or clerical error*, which the sentencing court [can] easily remedy" (*Sparber*, 10 NY3d at 472 [emphasis added]). In support of this statement, we cited *People v DeValle* (94 NY2d 870 [2000]), *People v Wright* (56 NY2d 613, 614 [1982]) and *People v Minaya* (54 NY2d 360 [1981]). We did not suggest in these cases that the sentencing judge was supposed to do anything at resentencing other than correct the discrete error prompting the resentencing in the first place (*see also People v Yannicelli*, 40 NY2d 598, 602 [1976] [it was error for the trial court to revisit the defendant's entire sentence when a procedural mistake in imposing a fine was the sole defect in the original sentencing and thus "the only reason why resentencing was ordered"]; *People v Harrington*, 21 NY2d 61 [1967] [although the order, in form, was vacated by reason of a ministerial error, the reason for the remand was merely to correct this mistake and therefore the net sentence should not have been changed]).

In *Sparber*, the defendants urged us to fix the pronouncement mistake, the only harm they alleged, by striking PRS from their sentences. We rejected this proposed remedy, deciding instead to remit their cases to Supreme Court "for resentencing and *the proper judicial pronouncement of the relevant PRS terms*" (10 NY3d at 465 [emphasis added]). Accordingly, we declared that "[t]he sole remedy for a procedural error such as this is to vacate the sentence and remit for a resentencing hearing *so that the trial judge can make the required pronouncement*" (*id.* at 471 [emphasis added]). In the decretal paragraph itself, we directed that "the order of the Appellate Division should be

modified by remitting to Supreme Court for a resentencing hearing *that will include the proper pronouncement of the relevant PRS term* (*id.* at 473 [emphasis added]).

By contrast, we have explained the required corrective action in far more general language when remitting for a resentencing requiring the exercise of discretion. For example, in *People v Yancy* (86 NY2d 239, 247 [1995]) the sentencing court mistakenly believed that the defendant was a predicate felon. Accordingly, in the decretal paragraph we modified the Appellate Division's order by "vacating defendant's sentence, and . . . remitt[ing the case] to Supreme Court, New York County, for resentencing." (*Id.*) Because the sentencing court in *Yancy* considered inappropriate factors in fashioning the sentence, resentencing logically entailed general, plenary proceedings. But in *Sparber*, the sentencing court merely failed to articulate properly the altogether appropriate sentence that it intended to impose. As a result, resentencing is limited to remedying this specific procedural error—i.e., to "mak[ing] the required pronouncement" (10 NY3d at 471). Put another way, resentencing to set right the flawed imposition of PRS at the original sentencing is not a plenary proceeding.

## Whether the Appellate Division May Reduce a Defendant's Sentence on Appeal from a Resentencing to Correct a *Sparber* Error

■ Because a trial court lacks discretion to reconsider the incarceratory component of a defendant's sentence at a resentencing to correct a *Sparber* error, the Appellate Division may not reduce the prison sentence on appeal in the interest of justice. The defendant's right to appeal is limited to the correction of errors or the abuse of discretion at the resentencing proceeding (*see* CPL 470.15 [1]; 470.20). Since the resentencing court is not authorized to lower the prison sentence at a *Sparber* resentencing, appellate courts are likewise unauthorized to do this—i.e., the resentencing court's failure to consider a lesser sentence was not an "error or defect" subject to reversal or modification (CPL 470.20).[2]

---

2. The dissenting Judges are hard-pressed to explain why they would reverse in *Rodriguez*, but not in *Lingle*. Both Rodriguez and Lingle contend that the Appellate Division has the power to reduce their sentences in the interest of justice, and the dissenting Judges agree. Similarly, both Lingle and Prendergast take the position, also espoused by Rodriguez and endorsed by the

Accordingly, the order of the Appellate Division should be affirmed in each case addressed in this opinion except *People v Sharlow*, where the Appellate Division's order should be reversed and the resentence imposed by Supreme Court reinstated.

CIPARICK, J. (dissenting in *People v Sharlow* and *People v Rodriguez*). I join the majority opinion in only four of these cases, dissenting in *People v Sharlow* and *People v Rodriguez*.

### *People v Sharlow*

On October 31, 2000, Sharlow pleaded guilty to one count of burglary in the second degree (Penal Law § 140.25 [1]) and one count of petit larceny (Penal Law § 155.25). Sharlow entered this guilty plea with the understanding that, if he successfully completed a drug treatment program in the ensuing 18 to 24 months, the burglary charge against him would be dismissed and that Supreme Court would sentence him to a conditional discharge on the petit larceny count. Supreme Court advised Sharlow, however, that if he failed to complete the drug treatment program or was rearrested during this period, the court would impose a seven-year determinate term of imprisonment. Supreme Court made no mention of the mandatory five-year term of postrelease supervision (PRS).

Sharlow did not complete the drug treatment program. Consequently, on November 1, 2002, Supreme Court sentenced defendant, as promised, to seven years. The court did not impose PRS at sentencing.

On May 14, 2008, after Sharlow became eligible for release from prison having served six sevenths of his term of imprisonment, the Department of Correctional Services (DOCS) conditionally released him pursuant to Correction Law § 803 (1). At that time, Sharlow began to serve a purported term of PRS that had been administratively imposed unlawfully by DOCS while he was in custody. Unfortunately, Sharlow violated the terms of his release and was reincarcerated on July 11, 2008. On July 31, 2008, DOCS notified Supreme Court that Sharlow was a "designated person," meaning that the original sentencing court had not properly imposed PRS (*see* Correction Law § 601-d [1]). As a result, Sharlow was brought back to court on September 17, 2008. Over Sharlow's objection, Supreme Court resentenced him by adding five years PRS to the original term of imprisonment. Sharlow appealed.

dissenting Judges, that resentencing courts are authorized to reconsider the incarceratory portion of a defendant's sentence at a *Sparber* resentencing.

Citing our holding in *People v Williams* (14 NY3d 198 [2010]), the Appellate Division reversed and vacated the term of PRS. The court concluded that Sharlow's "release from prison erected a bar under the Double Jeopardy Clause of the United States Constitution . . . to the addition thereafter of a period of PRS" (*People v Sharlow*, 75 AD3d 568, 569 [2d Dept 2010]). A Judge of this Court granted the People leave to appeal (15 NY3d 924 [2010]). The majority now reverses the order of the Appellate Division and I respectfully dissent.

In *Williams*, we recognized that despite a court's "inherent authority to correct illegal sentences . . . , there must be a temporal limitation on a court's ability to resentence a defendant" (14 NY3d at 217). Thus, we held "that the Double Jeopardy Clause prohibits a court from resentencing [a] defendant to the mandatory term of PRS after [a] defendant has served the determinate term of imprisonment and has been released from confinement by DOCS" (*id.*). This is so because "once a defendant [has been] released from custody and *returns to the community after serving the period of incarceration that was ordered by the sentencing court* . . . there is a legitimate expectation that the sentence, although illegal under the Penal Law, is final" (*id.* at 219 [emphasis added]). In adopting this rule, we cited federal authority standing for the proposition that "the resentencing of a defendant who has been released from confinement would be unconstitutional" (*id.* at 216, citing *DeWitt v Ventetoulo*, 6 F3d 32, 35-36 [1st Cir 1993], *cert denied* 511 US 1032 [1994]; *United States v Lundien*, 769 F2d 981, 986-987 [4th Cir 1985], *cert denied* 474 US 1064 [1986]; *Breest v Helgemoe*, 579 F2d 95, 101 [1st Cir 1978], *cert denied* 439 US 933 [1978]).

Here, Sharlow's release from confinement clearly bars resentencing under our holding in *Williams*. Sharlow duly served the period of incarceration ordered by the sentencing court (*cf. Williams*, 14 NY3d at 218 n 3 ["(t)his analysis has no application to a person who, for example, is erroneously released early by DOCS"]). Moreover, once DOCS calculated Sharlow's precise release date by operation of statute (*see* Correction Law § 803 [1] [a], [c]), he was discharged and returned to the community (*see id.*). These factors, as discussed in *Williams*, entitle Sharlow to a "legitimate expectation" that he will no longer be subject to additional punishment, thereby making his sentence final for all purposes.

Nonetheless, the majority construes our holding in *Williams* differently and now finds "that an expectation of finality arises

for purposes of double jeopardy when a defendant *completes* the lawful portion of an illegal sentence" (majority op at 630). Thus, under the majority's rationale, Sharlow's release from custody into the community is of no moment because Sharlow was still subject to DOCS supervision for the remaining one seventh of his prison term. In my view, this goes beyond what we held in *Williams*. Indeed, we did not create a rule that, upon a defendant's proper release from custody into the community, as here, a legitimate expectation of finality would not arise until such defendant was no longer subject to DOCS supervision. In fact, we never considered the maximum expiration date of a sentence in *Williams*, but rather focused our entire discussion on an inmate's release from confinement. Notably, we observed that "[s]ome [federal] courts have held that a reasonable expectation of finality arises upon completion of the imposed sentence, resulting in the attachment of jeopardy precluding resentencing" (14 NY3d at 216 [citations omitted]). Ultimately, however, we rejected this reasoning in favor of a rule, adopted by other federal courts, that double jeopardy bars resentencing once a defendant has been duly released from custody (*see id.* at 217).

Furthermore, other departments of the Appellate Division, in applying *Williams*, have also held that the conditional release of a defendant from prison bars the imposition of PRS on double jeopardy grounds (*see e.g. People v Velez*, 79 AD3d 542, 542 [1st Dept 2010] ["When a person serving a determinate sentence is conditionally released, the determinate sentence is still in effect, but the person has clearly been released from imprisonment within the meaning of *Williams*"]; *People v Peterkin*, 71 AD3d 1402, 1402 [4th Dept 2010] [although defendant returned to DOCS custody for violating the terms of his release, "County Court erred in resentencing him to a period of (PRS) after he had been conditionally released from the previously imposed determinate sentence of incarceration"]).

The Appellate Division in this case properly applied our holding in *Williams* and held that, following Sharlow's conditional release from custody into the community double jeopardy barred the imposition of PRS at a resentencing proceeding. That this resentencing occurred before the maximum expiration date of the original sentence does not change the proper understanding and application of *Williams* by the Appellate Division here, which drew the double jeopardy line at Sharlow's release from custody. Accordingly, I would vote to affirm.

## People v Rodriguez

On June 17, 2002, a jury convicted Rodriguez of gang assault in the first degree (Penal Law § 120.07). Supreme Court sentenced Rodriguez to a determinate prison term of 25 years. Although the court sheet initialed by the trial judge and the commitment sheet prepared by the court clerk indicated a five-year period of PRS, Supreme Court made no mention of PRS during the sentencing proceeding.

Rodriguez pursued his direct appeal. The Appellate Division affirmed the judgment of his conviction and sentence (*People v Rodriguez*, 33 AD3d 543 [1st Dept 2006]). On appeal to this Court, Rodriguez argued that the PRS component to his case was unlawful because Supreme Court failed to pronounce it orally at sentencing. A Judge of this Court granted Rodriguez leave to appeal (9 NY3d 881 [2007]). We consolidated his case with *People v Sparber* (10 NY3d 457 [2008]) wherein we agreed with Rodriguez that his PRS had been unlawfully imposed and remitted his case to Supreme Court for resentencing.

Upon remittal to Supreme Court, Rodriguez requested a reduction of his 25-year prison term. Supreme Court denied the request and resentenced defendant to the originally imposed 25 years followed by three years PRS. Initially, on May 18, 2010, the Appellate Division modified the judgment of resentence, as a matter of discretion in the interest of justice, by reducing the sentence to a term of 20 years, and, as so modified, affirmed (*see People v Rodriguez*, 73 AD3d 541, 541 [1st Dept 2010]). The court concluded that a *Sparber* resentencing was not a plenary proceeding that "present[ed] the sentencing court with an occasion to revisit the original prison sentence" (*id.*). Nonetheless, finding the prison term to be excessive, the court exercised its interest of justice discretion to modify the sentence as noted (*see id.* at 542).

The People moved for reargument at the Appellate Division. While that application remained pending, a Judge of this Court granted both Rodriguez and the People leave to appeal (15 NY3d 855 [2010]). Subsequently, on March 3, 2011, the Appellate Division granted the People's reargument motion and recalled its May 18, 2010 decision. (*People v Rodriguez*, 82 AD3d 418 [1st Dept 2011].) Although the court adhered to its prior conclusion that a *Sparber* resentencing is not a plenary proceeding that gives "occasion to revisit the original prison sentence" (*id.* at 418), the court now held that it was "without authority" to

reduce Rodriguez's term of imprisonment "as a matter of discretion in the interest of justice" (*id.* at 419). In light of the Appellate Division's holding, the People's appeal to this Court became moot. However, a Judge of this Court once again granted Rodriguez leave to appeal (16 NY3d 836 [2011]). The majority now affirms the order of the Appellate Division and I respectfully dissent.

I disagree with the majority's conclusion that, pursuant to our holding in *Sparber*, a resentencing court is not empowered to revisit the incarceratory component of a defendant's sentence (*see* majority op at 634-635). In *Sparber*, we found that the lower courts "intended to impose a sentence . . . that consisted of a determinate sentence and a period of PRS" (10 NY3d at 472). Absent any evidence to the contrary, we held the error in failing to pronounce PRS in those cases was "a procedural error, akin to a misstatement or clerical error" (*id.*). However, in concluding that vacatur of a defendant's sentence was the appropriate remedy in these cases, we never sought to limit the trial court's inherent power to revisit the incarceratory period of a sentence, if warranted.[1] The majority's assertion that a holding which allows a resentencing court to reconsider the incarceratory component of a defendant's sentence would "creat[e] a situation where thousands of *Sparber* resentencings might have to be repeated" (majority op at 634) is purely speculative and assumes that resentencing courts, following our decision in *Sparber*, did not believe they had such authority in the first instance.

I also disagree with the majority's conclusion that the Appellate Division is without authority to modify a defendant's resentence upon appeal to that court (*see* majority op at 635). It is axiomatic that "[a]n appeal to an intermediate appellate court may be taken as of right by [a] defendant from" a judgment of sentencing (CPL 450.10 [2]). "An appeal from a sentence . . . means an appeal from either the sentence originally imposed or *from a resentence following an order vacating the original sentence*" (CPL 450.30 [3] [emphasis added]). The appeal from a sentence "may be based upon the ground that such sentence either was (a) invalid as a matter of law, or (b) harsh or excessive" (CPL 450.30 [1]).

---

1. In that regard, we observed that a defendant is also free to make a motion pursuant to CPL 440.20 at any time alleging that the original sentencing court failed to consider PRS when determining the appropriate term of imprisonment (*see Sparber*, 10 NY3d at 471 n 6).

Here, Rodriguez does not assert that the sentence imposed by Supreme Court at the resentencing proceeding was invalid as a matter of law. Rather, he maintains that the Appellate Division may consider whether the sentence imposed by the lower court at resentencing was unduly "harsh or excessive" in its interest of justice discretion. I agree.

Indeed, CPL 470.15 (3) (c) specifically permits the Appellate Division to modify a sentence "[a]s a matter of discretion in the interest of justice." Moreover, CPL 470.15 (6) (b) defines "[t]he kinds of . . . modification[s] deemed to be made as a matter of discretion in the interest of justice" to include a modification of "a sentence [that], though legal, was unduly harsh or severe." Thus, contrary to the conclusion drawn by the majority, the Appellate Division's authority to modify a judgment of resentence is not limited to a resentencing where it has been established that an "error or defect" has occurred (see People v Delgado, 80 NY2d 780, 783 [1992] [even though a sentence may be lawful, "(a)n intermediate appellate court has broad, plenary power to modify a sentence that is unduly harsh or severe"]).

The majority decision here has the effect of stripping the Appellate Division of the broad discretionary authority it enjoys to reduce a sentence in the interest of justice upon an appeal from a resentencing to that court as a matter of right. Thus, I would reverse the order of the Appellate Division and remit the case to that court for the exercise of its interest of justice discretion.[2]

Accordingly, I would affirm the order of the Appellate Division in People v Sharlow and reverse in People v Rodriguez.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, SMITH, PIGOTT and JONES concur.

In People v Lingle, People v Parisi, People v Murrell, People v Prendergast: Order affirmed.

---

2. The majority opines that my position in Rodriguez is inconsistent with my decision to affirm in Lingle and Prendergast (see majority op at 635-636 n 2). I disagree. In Lingle, the Appellate Division considered whether Lingle's request for a reduction in the incarceratory portion of his sentence should be granted "as a matter of discretion in the interest of justice" but found such request to be "without merit" (People v Lingle, 66 AD3d 582, 583 [1st Dept 2009]). By contrast, the Appellate Division in Rodriguez held that it had no interest of justice discretion to modify a sentence imposed in a Sparber resentencing.

Moreover, unlike Rodriguez, Lingle and Prendergast do not stand for the proposition that a resentencing court is precluded from revisiting the incarceratory component of a defendant's prison sentence.

Judges GRAFFEO, SMITH and PIGOTT concur with Judge READ; Judge CIPARICK dissents and votes to reverse in a separate opinion in which Chief Judge LIPPMAN and Judge JONES concur.

In *People v Rodriguez*: Order affirmed.

Judges GRAFFEO, SMITH and PIGOTT concur with Judge READ; Judge CIPARICK dissents and votes to affirm in another opinion in which Chief Judge LIPPMAN and Judge JONES concur.

In *People v Sharlow*: Order reversed, etc.