[952 NE2d 1047, 929 NYS2d 55]

The People of the State of New York, Appellant, v Benito Acevedo, Respondent.

The People of the State of New York, Appellant, v Dionis Collado, Respondent.

Argued June 1, 2011; decided June 30, 2011

### POINTS OF COUNSEL

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Dana Poole* and *Hilary Hassler* of counsel), for appellants in the first and second above-entitled actions. Defendant's adjudication as a predicate violent felony offender should be reinstated and his original sentence left undisturbed. (*People v Sparber*, 10 NY3d 457; *People v Samms*, 95 NY2d 52; *People v Morse*, 62 NY2d 205; *People v Dozier*, 78 NY2d 242; *People v Montgomery*, 24 NY2d 130; *People v Ethrindge*, 36 AD2d 80, 29 NY2d 766; *People v Bell*, 73 NY2d 153; *People ex rel. Emanuel v McMann*, 7 NY2d 342; *People v Ashley*, 71 AD3d 1286, 15 NY3d 849; *People v Wright*, 270 AD2d 213.)

*Center for Appellate Litigation*, New York City (*Jan Hoth* and *Robert S. Dean* of counsel), for respondent in the first above-entitled action. The Appellate Division correctly found that where a defendant is resentenced pursuant to Penal Law § 70.85, New York's strict sequentiality laws (Penal Law § 70.04 [1] [b] [ii]; § 70.06 [1] [b] [ii]) preclude the use of that conviction as a predicate felony offense on any crime committed before

the date of the resentence. (*People v Bell*, 73 NY2d 153; *People v Sparber*, 10 NY3d 457; *People v Catu*, 4 NY3d 242; *People v Mezon*, 80 NY2d 155; *People v Lawrence*, 64 NY2d 200; *Matter of Murray v Goord*, 298 AD2d 94, 1 NY3d 29; *People v Wright*, 270 AD2d 213; *People v Tatta*, 196 AD2d 328; *Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *People v Samms*, 95 NY2d 52.)

*Center for Appellate Litigation*, New York City (*Bruce D. Austern* and *Robert S. Dean* of counsel), for respondent in the second above-entitled action. The Appellate Division correctly applied Penal Law § 70.04 (1) (b) (ii) in ruling that defendant was not a predicate offender because the resentence on the prior conviction occurred after the commission of the present felony, and the People's claim here is not reviewable by this Court. (*People v Williams*, 14 NY3d 198; *People v Mezon*, 80 NY2d 155; *People v Lawrence*, 64 NY2d 200; *People v Samms*, 95 NY2d 52; *People v Wright*, 270 AD2d 213; *People v Robles*, 251 AD2d 20; *People v Bell*, 73 NY2d 153; *People v Sparber*, 10 NY3d 457; *Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *People v Sturgis*, 69 NY2d 816.)

## OPINION OF THE COURT

Chief Judge LIPPMAN.

The threshold, and we believe dispositive, issue on these appeals is whether a resentencing sought by a defendant to correct an illegally lenient sentence is effective to temporally resituate the sentence and thus alter the underlying conviction's utility as a predicate for enhanced sentencing. This common issue arises from the following facts in each of the above-captioned matters.

### People v Acevedo

In 2006, Mr. Acevedo was convicted of criminal sale of a controlled substance in the third degree and possession of a controlled substance in the third degree and sentenced as a second felony drug offender with a prior violent felony to concurrent prison terms of six years and three years of postrelease supervision (PRS). The predicate conviction for Acevedo's 2006 sentence was one for attempted robbery in the second degree for which Acevedo was originally sentenced in accordance with his plea bargain to a determinate prison term of four years in 2001. Omitted from the 2001 sentence was the statutorily required PRS term (*see* Penal Law § 70.45 [1]); it had not been

made a part of the plea and was not pronounced at the 2001 sentencing proceeding. In 2008, some three years after Acevedo had completed the sentence imposed in the 2001 judgment, but while he was still serving his sentence under the 2006 judgment, he moved pursuant to CPL 440.20 to be resentenced on his 2001 conviction. The motion was granted on the People's consent in December 2008, and defendant was resentenced, with the People's consent pursuant to Penal Law § 70.85,* to the identical term of imprisonment nunc pro tunc to July 19, 2001.

Less than three weeks after the resentence, in early January 2009, Acevedo moved, again pursuant to CPL 440.20, to vacate his second felony drug offender adjudication in the 2006 case. He argued that because his resentence on the 2001 conviction occurred in 2008, it postdated the offense for which he was sentenced in 2006 and, accordingly, that the underlying conviction no longer qualified as a predicate for enhanced sentencing in connection with his 2006 conviction. A predicate sentence, he noted, "must have been imposed before commission of the present felony" (Penal Law § 70.06 [1] [b] [ii]).

The motion court, citing *People v Sparber* (10 NY3d 457, 472 [2008]), denied vacatur of the 2006 predicate adjudication upon the ground that the defect in the 2001 sentence arose from a mere "procedural error" that did not vitiate the 2001 judgment's validity as a prior felony conviction.

The Appellate Division, with one Justice dissenting, reversed (75 AD3d 255 [2010]). It reasoned that, logically, a resentence entails vacatur of the original sentence and that we had, in fact, held in *Sparber* that the "sole remedy for a procedural error such as this [the failure of the sentencing court to pronounce a PRS term at sentencing] is *to vacate the sentence and remit for a resentencing hearing* so that the trial judge can make the required pronouncement" (75 AD3d at 259, quoting *Sparber*, 10 NY3d at 471 [emphasis added]). Nor was the Court of the view that the omission to be cured by the procedure described in *Sparber* was a mere formality inconsequential beyond the limited purpose of curing the trial court's failure to pronounce the required PRS component of a determinate sentence. Here,

---

* Penal Law § 70.85 provides in relevant part that, with the People's consent, the court may at a resentence to cure the omission of mandatory PRS from a sentence "re-impose the originally imposed determinate sentence of imprisonment without any term of post-release supervision, which then shall be deemed a lawful sentence."

the Court noted our language in *Sparber* and *Matter of Garner v New York State Dept. of Correctional Servs.* (10 NY3d 358 [2008]) in which we stressed that resentencing to pronounce a mandatory PRS term had a substantial effect on a defendant and that the procedure implicated the public interest in ensuring the regularity of sentencing (*see Sparber*, 10 NY3d at 470; *Garner*, 10 NY3d at 363). Inasmuch, then, as the Court understood Acevedo's 2001 sentence to have been vacated as a necessary antecedent to his resentencing, it concluded that his operative sentence for the 2001 attempted robbery was the one imposed at the 2008 resentencing—one which plainly did not qualify as a predicate for enhanced sentencing with respect to the crimes for which defendant was convicted in 2006.

### *People v Collado*

The enhanced sentence challenged by Mr. Collado was imposed in September 2005; Collado, after being convicted of two counts of second degree robbery based upon an incident that took place in December 2004, was then adjudged a second violent felony offender and sentenced to concurrent eight-year terms. The predicate offense for the second violent felony offender adjudication was a second degree attempted robbery conviction obtained against Collado in June 2000, for which he was, at that time, sentenced to a determinate term of two years. PRS, although statutorily mandated as a component of both the 2005 and 2000 sentences, was not pronounced by either sentencing court. At the conclusion of the appellate process stemming from the 2005 judgment of conviction, this Court deemed Collado's still undischarged 2005 sentence illegal by reason of the sentencing court's failure orally to pronounce the PRS portion of Collado's determinate sentence (11 NY3d 888, 889 [2008]), and, in accordance with *Sparber* (10 NY3d at 469-471), we remitted the matter for resentencing (11 NY3d at 889).

In January 2009, before the *Sparber* proceeding with respect to the 2005 conviction, Collado moved pursuant to CPL 440.20 to be resentenced upon his 2000 conviction (the predicate for his 2005 second violent felony offender adjudication) upon the ground that the sentence imposed thereon suffered from the same defect as the 2005 sentence. At the ensuing *Sparber* proceeding, in March 2009, the court addressed both sentences. With respect to the 2000 conviction, it resentenced Collado to his originally imposed prison term but added thereto a PRS term of 1½ years. The resentence, however, was imposed nunc

pro tunc to the original sentence date of June 29, 2000 and was, as the court put it, "done the second the words are out of my mouth." As to the 2005 conviction, the court resentenced defendant to the originally imposed eight-year aggregate prison term and, in addition, pronounced as part of the sentence a five-year PRS term. The Court rejected Collado's contention that his 2009 resentence on the 2000 conviction operated to vitiate that conviction's utility as a predicate for enhanced sentencing on the 2005 conviction.

The Appellate Division, for the reasons stated in its decision in *Acevedo,* held that Collado could not be sentenced as a predicate felon on the 2005 conviction based on a predicate conviction for which sentence was, by reason of the 2009 resentence, subsequently imposed. It, accordingly, reversed, again over the dissent of a single Justice, vacated the judgment of resentence in connection with the 2005 conviction and remanded the matter for resentencing (73 AD3d 608 [2010]).

Both of the above-described Appellate Division orders are now before us pursuant to leave granted by a Justice of that Court.

The decisive feature of these cases is, we believe, that the sentencing errors defendants sought to correct by resentencing were errors in their favor: PRS was illegally omitted from their original sentences. The only practical benefit defendants could possibly gain from the resentencings was to move their sentences to a later date, thus eliminating their prior crimes as predicates in their later cases. We would hold that this tactic was ineffective: in circumstances like these, the original sentencing date should be the one to be considered for predicate felony purposes.

By the time of their resentence motions, Acevedo and Collado had fully served the sentences originally imposed upon the convictions later used as predicates for sentence enhancement. Assuming, without deciding, that their resentences were not nullities under our subsequent decision in *People v Williams* (14 NY3d 198 [2010], *cert denied* 562 US —, 131 S Ct 125 [2010]; *but see* 14 NY3d at 217) and that they were not for that reason ineffective to alter the relevant sentencing sequences, it remains that resentencing is not in our view permissibly employed simply to leapfrog a sentence forward so as to vitiate its utility as a sentencing predicate.

It is true, of course, that we held in *Sparber* that the sole appellate remedy for the failure of the trial court to pronounce the

PRS component of a determinate sentence is to remit for vacatur of the original sentence followed by a resentence curing the omission (10 NY3d at 469-471). *Sparber* resentencing, however, was not the remedy sought by the *Sparber* appellants—whose object was not a proceeding to cure the omission of mandatory PRS from their original sentences, but the simple expungement of the PRS terms to which they had been subject (*id.*)—and, it is fair to say that *Sparber* resentencing is not from the perspective of most defendants remedial. Ordinarily, defendants do not move for the addition of PRS to their sentences. *Sparber* resentencing is rather a remedy most frequently sought by the Department of Correctional Services pursuant to Correction Law § 601-d to assure that a sentence in connection with which PRS is required will in fact legally impose that prescribed element of punishment.

In moving to be relieved of their original sentences and thereafter resentenced in connection with their prior felony convictions, defendants manifestly had no expectation that they would obtain "relief" from those originally imposed, fully discharged sentences. It is instead transparent, if only from the timing of their CPL 440.20 motions, that defendants' purpose was, by means of vacatur and resentence, to render their prior convictions useless as predicates to enhance punishment for the crimes they subsequently committed. Resentence is not a device appropriately employed simply to alter a sentencing date and thereby affect the utility of a conviction as a predicate for the imposition of enhanced punishment.

The present scenarios afford no occasion to decide what effect a bona fide *Sparber* resentence, or any resentence other than the ones before us, should have for predicate felony purposes. All that we would decide is that the *Sparber* relief these defendants obtained was not effective to avoid the penal consequences of reoffending.

Accordingly, in each case, the order of the Appellate Division should be reversed and the order of Supreme Court reinstated.

PIGOTT, J. (concurring). I agree with Chief Judge Lippman's opinion that defendants are not entitled to have their sentences set aside; but I reach this conclusion for different reasons.

Under New York's Penal Law, a court may sentence a defendant as a second felony offender only if certain statutory conditions are met. One of those conditions is the obvious one, that

the sentence for the prior conviction must have been imposed before commission of the present felony (*see* Penal Law § 70.04 [1] [b] [ii]; § 70.06 [1] [b] [ii]).

*People v Bell* (73 NY2d 153 [1989]) is the seminal case addressing this rule. There, prior to pleading guilty to the predicate felony, the defendant was first successful in overturning two jury convictions. Defendant argued that the "sentence" for purposes of determining second felony offender status was the original sentence on the first overturned conviction, more than 10 years before the commission of his current crimes. This Court disagreed, holding that a "reversal" under the Criminal Procedure Law "means the vacating of such judgment" (CPL 470.10 [1]), which includes both the conviction and the sentence (CPL 1.20 [15]). Having successfully challenged his prior convictions, defendant could not thereafter claim that the date of the earliest reversed conviction controlled.

Unlike the scenario in *Bell*, when a defendant is resentenced based upon a *Sparber* error, the underlying conviction remains as does that part of the sentence imposing incarceration, because, under *Sparber* and its progeny, the purpose of the resentence is simply to provide a process to correct a "procedural error," "akin to a misstatement or clerical error" (*People v Sparber*, 10 NY3d 457, 472 [2008]).

Our recent holding in *People v Lingle* (16 NY3d 621 [2011]) makes this clear. We stated specifically that in remitting those several cases to Supreme Court we did so "for resentencing and the proper judicial pronouncement of the relevant PRS terms" (*id.* at 634, quoting *Sparber*, 10 NY3d at 465 [emphasis omitted]). We distinguished the decretal paragraph we used in *Sparber* (10 NY3d at 473), which directed that "the order of the Appellate Division should be modified by remitting to Supreme Court for a resentencing hearing that will include the proper pronouncement of the relevant PRS term," from the remittal language we have used in other resentencing cases, noting, for example, that in a case where the court erred in ruling that a defendant was a predicate felon, we remitted for the court to vacate the original sentence and to resentence the defendant.

The resentencing hearings that took place in these *Sparber* appeals were limited to remedying the specific procedural error of the sentencing judge; i.e., to make the required PRS pronouncement (*Lingle*, 16 NY3d at 635 ["Put another way, resentencing to set right the flawed imposition of PRS at the original sentencing is not a plenary proceeding"]). The

convictions were undisturbed because the resentencing courts lacked the power to reconsider either the conviction or the incarceration component of the original sentence. As a result, the original sentence date remained. For these reasons, I would hold that when determining whether a defendant is a prior felony offender for purposes of sentencing under the Penal Law, the original sentence date on the prior conviction, and not the *Sparber* resentencing date, controls.

JONES, J. (dissenting). Defendants seek to vacate their predicate felony adjudications on the ground that they are not second felony offenders. Their predicate felony sentences were vacated and they were resentenced under *People v Sparber* (10 NY3d 457 [2008]). The resentencing in each case took place after the commission of the second felony. Penal Law § 70.06 (1) (b) (ii) makes absolutely clear that "[f]or the purpose of determining whether a prior conviction is a predicate felony conviction . . . [the s]entence upon such prior conviction must have been imposed before commission of the present felony." Because this criterion is absent from these cases, I respectfully dissent.

This Court fashioned the following remedy for procedurally flawed impositions of PRS terms: "vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement" (*Sparber*, 10 NY3d at 471). Because vacating a sentence has the legal effect of rendering it a nullity, there is no doubt that the *Sparber* resentences have— for better or worse—affected defendants' predicate felony status.

Here, the failure to pronounce defendants' mandatory PRS terms at the predicate sentencing created the circumstance which mandated that defendants be resentenced. Because their resentencing under *Sparber* took place after the subsequent felony conviction, defendants' proper sentences were not imposed until after the commission of the present felony; as such, defendants can no longer be classified as second felony offenders (*see People v Robles*, 251 AD2d 20 [1st Dept 1998]). Accordingly, I would vote to affirm the Appellate Division orders.

Judges CIPARICK and SMITH concur with Chief Judge LIPPMAN; Judge PIGOTT concurs in result in a separate opinion in which Judges GRAFFEO and READ concur; Judge JONES dissents and votes to affirm in another opinion.

In each case: Order reversed, etc.