[975 NE2d 907, 951 NYS2d 461]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v JESSIE VELEZ, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v VINCENT RODRIGUEZ, Appellant.

Argued May 29, 2012; decided June 28, 2012

## POINTS OF COUNSEL

*Robert T. Johnson, District Attorney*, Bronx (*Bari L. Kamlet* and *Joseph N. Ferdenzi* of counsel), for appellant in the first above-entitled action. I. The Court's decision and order vacating defendant's resentence and reinstating defendant's original sentence without a period of postrelease supervision was erroneous in light of *People v Lingle* (16 NY3d 621 [2011]) and *People v Sharlow* (16 NY3d 621 [2011]) and must be reversed.

(*People v Williams*, 14 NY3d 198; *People v Sparber*, 10 NY3d 457.) II. Defendant cannot argue that his resentencing was precluded under Correction Law § 601-d when he acquiesced to necessary adjournments generated for his benefit or caused by the court's consideration of defendant's objections to resentencing. (*People v Cona*, 49 NY2d 26; *People v Sparber*, 10 NY3d 457; *Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *People ex rel. McLaughlin v Board of Police Commrs. of City of Yonkers*, 174 NY 450; *Selzer v Baker*, 295 NY 145; *People v Jordan*, 16 NY3d 845; *People v Acevedo*, 17 NY3d 297.)

*Center for Appellate Litigation*, New York City (*Mark W. Zeno* and *Robert S. Dean* of counsel), for respondent in the first above-entitled action. I. The court's addition of five years' postrelease supervision to respondent's sentence after that sentence had been completed, and after the People's time to challenge the sentence's legality expired violated double jeopardy. (*People v Williams*, 14 NY3d 198; *People v Lingle*, 16 NY3d 621; *People v Catu*, 4 NY3d 242; *People v Louree*, 8 NY3d 541; *Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *People v Sparber*, 10 NY3d 457; *Earley v Murray*, 451 F3d 71, 462 F3d 147.) II. The court's failure to impose resentence within the 40-day time limit fixed by Correction Law § 601-d (4) (c) and (d) rendered the resentence untimely and unlawful, or in the alternative, created its own constitutionally enforceable expectation of finality. (*People v Liotta*, 79 NY2d 841; *Doctors Council v New York City Employees' Retirement Sys.*, 71 NY2d 669; *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.*, 45 NY2d 471; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *People v Ballman*, 15 NY3d 68; *People v Paulin*, 17 NY3d 238; *People v Santiago*, 17 NY3d 246; *United States v DiFrancesco*, 449 US 117; *People v Williams*, 14 NY3d 198; *People v Lingle*, 16 NY3d 621.)

*Center for Appellate Litigation*, New York City (*Mark W. Zeno* and *Robert S. Dean* of counsel), for appellant in the second above-entitled action. The court's failure to impose resentence within the 40-day time limit fixed by Correction Law § 601-d (4) (d) rendered the resentence untimely and unlawful, or in the alternative, created its own constitutionally enforceable expectation of finality. (*People v Catu*, 4 NY3d 242; *People v Louree*, 8 NY3d 541; *Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *People v Sparber*, 10 NY3d 457; *Earley v Murray*, 451 F3d 71, 462 F3d 147; *People v Liotta*, 79

NY2d 841; *People v Lingle*, 16 NY3d 621; *People v Williams*, 14 NY3d 198; *People v Savery*, 90 AD3d 1505; *People v Becker*, 72 AD3d 1290.)

*Cyrus R. Vance, Jr., District Attorney*, New York City (*John B.F. Martin* and *Alan Gadlin* of counsel), for respondent in the second above-entitled action. Correction Law § 601-d does not prevent the court from exercising its inherent authority to correct an unlawful sentence and therefore the court properly resentenced defendant. (*Matter of Garner v New York State Dept. of Correctional Servs.*, 10 NY3d 358; *People v Sparber*, 10 NY3d 457; *People v Sturgis*, 69 NY2d 816; *People v Dodson*, 48 NY2d 36; *People v DeValle*, 94 NY2d 870; *People v Williams*, 87 NY2d 1014; *People v Wright*, 56 NY2d 613; *People v Minaya*, 54 NY2d 360; *People v Savery*, 90 AD3d 1505; *People v Becker*, 72 AD3d 1290, 15 NY3d 747.)

**OPINION OF THE COURT**

SMITH, J.

Correction Law § 601-d provides a procedure for resentencing defendants in cases where the original sentence illegally omitted a term of postrelease supervision (PRS). In these two cases, defendants claim that their resentencings under the statute were untimely, and therefore invalid. Both defendants rely on the failure of the courts that resentenced them to meet a deadline contained in the statute; defendant Jessie Velez also complains that his resentencing took place after his original sentence had expired, and thus violated constitutional prohibitions on double jeopardy.

We hold that the failure to meet the statutory deadline does not impair the validity of the resentencings in these cases. We agree with Velez, however, that his resentencing was barred by double jeopardy under our decision in *People v Williams* (14 NY3d 198 [2010]).

I

Both defendants were convicted of violent felonies—Velez of burglary and defendant Vincent Rodriguez of assault. Both received determinate sentences of imprisonment (*see* Penal Law § 70.02 [2] [a]). Their sentences were required by law to include a period of PRS (Penal Law § 70.00 [6]; § 70.45 [1]), but in each case the court failed to impose a PRS term. We held in *Matter of Garner v New York State Dept. of Correctional Servs.* (10 NY3d 358, 360 [2008]) that the Department of Correctional Services

(DOCS) (now the Department of Corrections and Community Supervision) cannot remedy such an error by administrative action: "only a judge may impose a PRS sentence." We said in *Garner* that our holding was "without prejudice to any ability that either the People or DOCS may have to seek the appropriate resentencing" (*id.* at 363 n 4).

The Legislature responded to *Garner* by enacting Correction Law § 601-d. That statute provides for a procedure to be initiated by DOCS where a person in DOCS's custody, or under its supervision, was given a determinate sentence which was required by law to include PRS, but where DOCS's records do not show that a PRS term was actually imposed. In such a case, DOCS must "make notification of that fact to the court that sentenced such person, and to the inmate or releasee" (Correction Law § 601-d [2]). The court, when it receives the notification, "shall promptly seek to obtain sentencing minutes, plea minutes and any other records and shall . . . conduct any reconstruction proceedings that may be necessary" (Correction Law § 601-d [4] [b]). The statute contains a series of deadlines, all running from the date the court receives DOCS's notification: Within 10 days, the court is required to appoint counsel for the defendant and to calendar a court appearance (Correction Law § 601-d [4] [a]); within 20 days, an initial court appearance must occur (*id.*); within 30 days, the court "shall commence a proceeding to consider resentence" (Correction Law § 601-d [4] [c]); and within 40 days after receiving the notification, the court "shall . . . issue and enter a written determination and order" (Correction Law § 601-d [4] [d]).

In both of these cases, DOCS sent notices to the sentencing courts and to defendants pursuant to section 601-d. In both cases, the resentencings were delayed.

The notice in *Velez* was sent on October 14, 2008. At that time, though Velez had been conditionally released, after serving more than seven years of his nine-year prison sentence, the full term of the sentence had not expired. An initial court appearance (at which Velez's presence was excused) took place on November 17, 2008. The court and counsel tried to obtain minutes of the original sentencing, but that proved difficult; after several adjournments, the court finally received a copy of the minutes, which it supplied to counsel on April 8, 2009. By then, not only had the statutory 40-day deadline passed, but the maximum term of Velez's prison sentence had expired, on March 3, 2009. Velez was resentenced on June 18, 2009.

In *Rodriguez*, DOCS sent its notice on April 23, 2010. For reasons not clear from the record, Rodriguez was not resentenced until June 18, 2010, concededly beyond the statutory 40-day limit. Rodriguez, unlike Velez, was still serving his original sentence at the time of his resentencing.

The Appellate Division reversed in *Velez* and vacated Velez's resentence on double jeopardy grounds. The court relied on *People v Williams* and said that "the controlling date for double jeopardy purposes under *Williams* is the date of release from prison, not the expiration date of the sentence" (*People v Velez*, 79 AD3d 542 [1st Dept 2010]). The Appellate Division affirmed in *Rodriguez*, concluding that the resentencing "was neither barred by double jeopardy nor otherwise unlawful" (*People v Rodriguez*, 88 AD3d 557 [1st Dept 2011]). Judges of this Court granted leave to appeal to the People in *Velez* (17 NY3d 802 [2011]) and to Rodriguez (18 NY3d 886 [2012]), and we now affirm the Appellate Division order in each case.

## II

■ We conclude that the violations of the 40-day deadline in these cases do not invalidate the resentencings.

The statute does not say that no person may be resentenced if the 40-day deadline (or any of the others listed in subdivision [4] of the statute) is not met. The only language that describes the consequences of missing a deadline is in subdivision (6), which says that if DOCS is not notified that the court has made a timely determination, DOCS "may notify the court that it has not received a determination and, in any event, shall adjust its records with respect to post-release supervision noting that the court has not, in accordance with subdivision four of this section, imposed a sentence of post-release supervision" (Correction Law § 601-d [6]). Thus, the People argue, the only effect of a tardy ruling is to allow DOCS to send another notification and to require it to make a notation in its records.

Defendants argue that the Legislature could not have meant a breach of the statutory deadlines to be of so little importance. They point out that the Legislature not only enacted the deadlines, but enacted specific, and quite limited, provisions for extending them: The defendant "may, with counsel, knowingly consent to extend" the 30-day and 40-day deadlines and the People "may apply to the court for an extension of ten days on the basis of extraordinary circumstances that preclude final resolution" of the resentencing issue within the statutory period

(Correction Law § 601-d [4] [e]). Why, defendants ask, would the Legislature regulate so strictly the extension of deadlines that have no substantive significance? The question is a fair one; but the fact remains that the Legislature did not say, as it could easily have said, that resentencings after the 40-day deadline are forbidden.

We find in the text of the statute no conclusive answer to whether the authors of the statute intended the deadlines to be a limitation on a court's power to resentence. There is specific discussion of that issue, however, in the legislative history, which persuades us to read the statute as the People do.

Section 601-d was part of a Governor's program bill (see Division of Budget Bill Mem, Bill Jacket, L 2008, ch 141, at 14). Thus interested agencies in the Executive Department, and the Governor, might be expected to know what the legislation was intended to mean. One interested agency, and the Governor himself, expressed themselves directly on the point that concerns us. The Division of Criminal Justice Services said, in a letter commenting on the bill, that "[i]f the statutory time-frames are not adhered to, there is nothing in the bill that prohibits resentencing of the inmate/releasee at a later date" (Letter of Denise E. O'Donnell to Hon. David Nocenti, June 26, 2008, Bill Jacket, L 2008, ch 141, at 21). And the Governor observed, in his memorandum approving the bill:

> "re-sentencing is not precluded if a court fails to issue a decision within the mandated time. Instead, DOCS or Parole will be required to revise their records to reflect the absence of a PRS term. If the court later re-sentences the defendant to impose such a term, of course, the agencies would follow that judicial direction by again revising their records accordingly." (Governor's Approval Mem, Bill Jacket, L 2008, ch 141, at 6, 2008 McKinney's Session Laws of NY, at 1653-1654.)

We have found no comments from members of the Legislature that directly address our issue. However, a memorandum by the bill's sponsor stresses the importance of imposing PRS where it is warranted: "There would be unacceptable consequences for public safety if custody or supervision ended when it should be continued" (Senate Introducer's Mem in Support, Bill Jacket, L 2008, ch 141, at 11, 2008 McKinney's Session Laws of NY, at 1820). It is reasonable to infer that the Legislature would not

have wanted to endanger public safety solely because a time-table was not met.

We therefore interpret the statute not to bar a resentencing after the 40-day deadline of Correction Law § 601-d (4) (d) has passed, at least in cases like these, where the delays were not egregious, and where nothing suggests that they were willfully caused by the People or that they prejudiced defendants. We need not consider whether different cases would call for different results.

## III

While both defendants make double jeopardy arguments, we find Rodriguez's to be without merit. We conclude, however, that Velez's resentencing was barred by double jeopardy.

■ The controlling case on this issue is *Williams*, in which we held that, where a sentence is no longer subject to appeal, the Double Jeopardy Clause of the Federal Constitution forbids a resentencing to add PRS after the original sentence is completed. We said in *Williams*:

> "Even where a defendant's sentence is illegal, there is a legitimate expectation of finality once the initial sentence has been served and the direct appeal has been completed (or the time to appeal has expired). In these situations, the sentences are beyond the court's authority and an additional term of PRS may not be imposed" (14 NY3d at 217).

The Appellate Division held that Velez was protected against resentencing by the rule of *Williams*, because he had been conditionally released, and thus his sentence had been "served," before he was resentenced (79 AD3d at 542). This rationale was mistaken, as Velez concedes; after the Appellate Division decision in *Velez*, we held in *People v Sharlow* (companion case to *People v Lingle*, 16 NY3d 621, 630-631, 631 n 1 [2011]) that a defendant who is conditionally released before his sentence expires has not served his sentence within the meaning of *Williams*. But, as Velez points out, the Appellate Division's error was immaterial in his case, because his full nine-year sentence expired on March 3, 2009, more than three months before he was resentenced.

The People argue that Velez cannot benefit from *Williams* because a proceeding to resentence him had begun—though he had not actually been resentenced—before his original sentence

expired. We reject the argument. *Williams* says that "once the initial sentence has been served . . . an additional term of PRS may not be *imposed*" (14 NY3d at 217 [emphasis added]). Under *Williams,* a defendant acquires a "legitimate expectation of finality" when his sentence has been fully served, and the sentence may not then be enhanced by adding a term of PRS, even though the defendant may be—as the defendants in *Williams* itself were—on notice that his original sentence was illegal. The beginning of a resentencing proceeding cannot affect that "legitimate expectation" because under the theory of *Williams* a defendant can have such an expectation even when he knows of the defect in his original sentence.

It was part of our purpose in *Williams* to identify "a temporal limitation on a court's ability to resentence a defendant" (*id.*)—a clear point in time at which a resentencing to add PRS is constitutionally barred. As we said in *Lingle,* "our rule in *Williams* . . . promotes clarity, certainty and fairness" (16 NY3d at 631). The rule the People suggest—that the expectation of finality ends when a resentencing proceeding begins—would undermine clarity, because the moment when a Correction Law § 601-d proceeding begins is hard to fix. The People implicitly admit this by declining to choose a specific beginning date: They say only that it begins "at the latest" on the date of the first court appearance in the resentencing process. They do not argue that the beginning date is the one on which DOCS sends its notification to the court; while that date does initiate the resentencing proceeding in a sense, it could hardly affect a defendant's "expectation of finality," because the defendant does not know the notification has been sent until he receives it. And to say that the proceeding begins when the defendant receives the notification is unsatisfactory, because the date of receipt will often be hard to prove: How is a court to know when a defendant, whether in prison or on conditional release, actually received or should be deemed to have received his mail? The date of the first court appearance is also an unsatisfactory beginning date, because the proceeding has obviously begun some time before that, and the appearance itself cannot affect defendant's "legitimate expectation." On the first court date the defendant may not even be personally present—as Velez was not.

The People argue that, if a resentencing proceeding that is begun before defendant's original sentence expires may not be completed after the expiration date, defendants will have an incentive to stall. We do not think this problem should be a

major one. The expiration date of a defendant's original sentence is, or easily can be, known in advance to DOCS, the prosecutors and the court. DOCS should be able, in most cases, to notify the court of the need for resentencing well in advance of the expiration date, and courts and prosecutors can simply refuse adjournments that would take the proceeding beyond that date.

It should rarely, if ever, be impossible to complete the resentencing process before a defendant's term of imprisonment expires. It is no doubt sometimes preferable to wait, as Supreme Court did in *Velez*, until the original sentencing minutes are available. Having those minutes enables a court to be sure that a resentencing is necessary—that the defendant was not sentenced to PRS already—and unnecessary resentencings might create problems in some contexts (*cf. People v Acevedo*, 17 NY3d 297, 299 [2011] [discussing the effect of resentencing on a "conviction's utility as a predicate for enhanced sentencing" in other cases]). But it is not essential to have the sentencing minutes at the time a defendant is resentenced. Ordinarily if it turns out the resentencing was unnecessary, little harm will be done.

Accordingly, in each case, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, PIGOTT and JONES concur.

In *People v Velez*: Order affirmed.

In *People v Rodriguez*: On review of submissions pursuant to section 500.11 of the Rules of the Court of Appeals (22 NYCRR 500.11), order affirmed.