This opinion is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------------

No. 149
The People &c.,
            Appellant,
        v.
Roni Smith,
            Respondent.
-----------------------
No. 150
The People &c.,
            Appellant,
        v.
Keith Fagan,
            Respondent.

Case No. 149:
        Dana Poole, for appellant.
        David J. Klem, for respondent.

Case No. 150:
        Justin J. Braun, for appellant.
        Barbara Zolot, for respondent.

PIGOTT, J.:

        At the time of its enactment in 1998, Penal Law § 70.45 (1) (as added by L 1998, ch 1 § 15), provided that "[e]ach determinate sentence also includes, as a part thereof, an additional period of postrelease supervision" (PRS).  A

- 1 -

substantial number of trial courts mistakenly interpreted the provision to mean that PRS arose as a matter of law and did not need to be pronounced at sentencing.[1]  Thereafter, in People v Catu (4 NY3d 242 [2005]), we held that PRS "is a direct consequence of a criminal conviction" such that a court accepting a guilty plea from a defendant must ensure that the defendant is aware of the PRS component of his sentence in order for the defendant "to knowingly, voluntarily and intelligently choose among alternative courses of action" (id. at 244-245).  We explained that "[a]lthough a court is not required to engage in any particular litany when allocuting the defendant 'due process requires that the record must be clear that the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant'" (id. at 245, quoting People v Ford, 86 NY2d 397, 403 [1995]).  Therefore, a defendant who is not apprised of the PRS component is entitled to reversal of the conviction and automatic vacatur of the plea, and the defendant is not required to demonstrate that he would not have pleaded guilty had he been aware of the PRS component (Catu, 4 NY3d at 244-245).

On these appeals, neither defendant Smith nor defendant

---

[1]  Notably, it was not until 2008 that the Legislature amended Penal Law § 70.45 (1) to require that "[w]hen a court imposes a determinate sentence it shall in each case state not only the term of imprisonment, but also an additional period of [PRS] as determined pursuant to this article" (L 2008, ch 141, § 3).

Fagan was apprised by the court of the PRS component relative to the sentence imposed on their guilty pleas entered in January 2002 and May 2000, respectively.  They brought postconviction motions to challenge their Catu-infected pleas and convictions that were utilized later to enhance sentences for subsequent crimes, essentially seeking retroactive application of Catu to disqualify their predicate offenses.  In each case, defendant was satisfied with the plea and does not now claim innocence. Rather, because a subsequent crime has predicate felony implications, defendants challenged the use of their earlier convictions as "unconstitutionally obtained" on the ground that they were not apprised of the PRS component of their sentence. Although each defendant's challenge to the use of the Catu-infected conviction originated under the guise of an ineffective assistance of counsel claim, the primary issue that we must decide is whether, pursuant to either federal or state retroactivity principles, Catu applies retroactively in enhanced sentence proceedings.  We hold that it does not, and, therefore, reverse the orders of the Appellate Division in each appeal.

I.

*People v Roni Smith*

In November 2001, defendant Roni Smith pleaded guilty to the violent felony of robbery in the first degree (Penal Law § 70.02 [1]; Penal Law § 160.15 [4]) in satisfaction of all counts in the indictment.  The trial court failed to advise defendant

that his sentence also included a mandatory term of PRS.[2]  In

January 2002, he was sentenced to a determinate term of seven

years' imprisonment.  According to defendant, he filed a timely

notice of appeal,[3] but it appears that such appeal was never

perfected.

In April 2007, one year before his seven-year term of

imprisonment expired, defendant was conditionally released and

the Department of Corrections and Community Supervision (DOCCS)

administratively imposed a sentence of five years' PRS pursuant

to Penal Law § 70.45 (1).  While defendant was serving his

administratively-imposed PRS term, we held that PRS sentences

must be "pronounced" by the court pursuant to CPL 380.20 and

380.40 and may not be administratively imposed (Matter of Garner

v New York State Dept. of Corr. Servs., 10 NY3d 358 [2008]; see

People v Sparber, 10 NY3d 457 [2008]).

On October 14, 2008, the sentencing court held a

resentencing proceeding pursuant to Correction Law § 601-d.[4]  At

that point, defendant had served 18 months of PRS.  The court

---

[2] Although the sentencing minutes are not in the record, the parties agree that there is no indication that defendant was apprised of PRS at sentencing.  Notably, defendant's commitment sheet did not contain any reference to PRS.

[3] Defendant's notice of appeal is not contained in the record.

[4] This provision was enacted in response to our decisions in Garner and Sparber, and facilitated a review by sentencing courts of all cases between September 1, 1998 and June 30, 2008 where the PRS term was not specified in the commitment order.

stated that it was unsure if it had previously advised defendant of the PRS term because it did not have the minutes. Defendant stated that he would accept a minimum PRS term -- 2 1/2 years -- and that if the People agreed, defendant "would waive waiting for the actual minutes to arrive and waive any claims he had with respect to the plea without the court re-imposing the sentence again with the actual term of [PRS] as part of the sentence, nunc pro tunc." The court then sentenced defendant to seven years' imprisonment with the minimum 2 1/2 year term of PRS, nunc pro tunc to January 2002. So, as of that date, defendant, for the second time, pleaded guilty to robbery in the first degree, was advised of PRS and served his PRS sentence, which expired on October 23, 2009.

In December 2010, he was indicted on two counts of criminal possession of a weapon in the second degree (Penal Law § 265.03 [1] [b]; [3]) for an incident that occurred on November 17, 2010. He pleaded guilty to the first count of the indictment in satisfaction of both counts. Prior to allocution, the People filed a statement of predicate violent felony conviction (Penal Law § 70.04; CPL 400.15) that utilized defendant's January 2002 first-degree robbery conviction as a predicate offense. At the plea proceeding, defendant stated that he was the same person mentioned in the statement and that he did not wish to challenge the constitutionality of his prior conviction. The court adjudicated defendant a second violent felony offender. At the

June 6, 2012 sentencing proceeding, defendant was sentenced to a determinate seven-year term of imprisonment with five years' PRS.[5]

In June 2014, defendant made a motion to set aside his sentence pursuant to CPL 440.20 (1) on the ground that defense counsel at his 2012 sentencing was ineffective for not challenging the 2002 predicate conviction, which, according to defendant, was obtained in violation of Catu.  Defendant argued that his predicate conviction was "unlawfully obtained" under CPL 400.15 (7) (b)[6] because defense counsel failed to investigate the predicate conviction and lacked a strategic basis for not doing so.  He sought vacatur of his 2012 sentence, disqualification of his 2002 robbery conviction as a predicate offense, and resentencing as a first violent felony offender.

Defendant supported the motion with an affirmation of defense counsel who represented defendant relative to the 2012 conviction.  Counsel explained that he failed to investigate the proceedings that led to the 2002 conviction, and he did not ask

---

[5] Defendant filed a timely notice of appeal, which was eventually withdrawn by stipulation of the parties.  The sole issue raised was whether defendant was required to register pursuant to New York City's Gun Offender Registration Act.

[6] This provision states, as relevant here, that a prior conviction "which was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States must not be counted in determining whether the defendant has been subjected to a predicate violent felony conviction."

defendant if the court had apprised defendant of PRS.  He was unaware that the predicate conviction had been unconstitutionally obtained at the time of defendant's arraignment on the predicate felony, and maintained that, had he known about the Catu error, he would have challenged the predicate conviction as "unconstitutionally obtained" and defendant would not have been adjudicated a second violent felony offender.

The People opposed the motion, claiming that a Catu error does not rise to the level of a federal constitutional violation and that Catu did not apply retroactively to convictions that had become final prior to the Catu decision.

Supreme Court, relying on People v Fagan (116 AD3d 451 [1st Dept 2014]), granted defendant's motion, holding that he was deprived of the effective assistance of counsel due to counsel's failure to challenge the predicate conviction.  As relevant here, Supreme Court determined that Catu applied retroactively.  The court resentenced defendant as a first felony offender to seven years' imprisonment with five years' PRS.

The Appellate Division modified the judgment by reducing defendant's sentence to a term of six years' imprisonment with five years' PRS, but otherwise affirmed (132 AD3d 511, 511 [1st Dept 2015]).  Pointing to CPL 400.15 (7) (b), the court held that "[b]ecause a conviction obtained in violation of Catu implicates rights under the federal Constitution as well as the state constitution (citations omitted), the [motion] court

properly granted defendant's CPL 440.20 motion and vacated his sentence as a second violent felony offender on the ground that his 2002 conviction could not be counted as a predicate felony under CPL 400.15 (7) (b)" (id. at 511-512). Moreover, the court held that although the 2002 conviction preceded the Catu decision, "the rule of law announced in Catu applies retroactively to Catu convictions" (id. [citations omitted]).

A Judge of this Court granted the People leave to appeal.

## II.

### *People v Keith Fagan*

On April 18, 2000, defendant Keith Fagan pleaded guilty to attempted robbery in the first degree.[7] The following month, he was sentenced as a second felony offender to a determinate term of seven years' imprisonment. The court did not apprise defendant at sentencing that he was subject to a mandatory term of PRS.

Defendant was released from prison in March 2006 and DOCCS administratively imposed a five-year PRS sentence. On January 28, 2009, defendant appeared for a Correction Law § 601-d hearing. At the hearing, the court acknowledged that the administratively-imposed PRS was illegal, and, to remedy the illegality, resentenced defendant to a seven-year determinate

---

[7] The minutes to the plea proceeding have been lost, but the parties agree that defendant had not been apprised of PRS.

sentence with five years' PRS <u>nunc</u> <u>pro</u> <u>tunc</u> to the original sentencing date of May 23, 2000.

In February 2009, defendant was charged in a 12-count indictment with committing various offenses, including robbery and grand larceny.  While defendant was awaiting trial on that indictment, Supreme Court vacated defendant's PRS term that had been imposed at the January 28, 2009 resentencing in light of <u>People v Williams</u> (14 NY3d 198 [2010], <u>cert</u> <u>denied</u> 562 US 947 [2010]), in which we held that "after release from prison, [there is] a legitimate expectation in the finality of a sentence [that] arises and the Double Jeopardy Clause prevents reformation to attach a PRS component to the original completed sentence" (<u>Williams</u>, 14 NY3d at 217).

In June 2010, defendant proceeded to trial on the February 2009 indictment.  In the middle of trial, however, he pleaded guilty to the lesser included offense of attempted robbery in the first degree in satisfaction of all 12 counts in the indictment.  He was arraigned as a persistent violent felony offender based on two prior felonies -- a 1980 conviction for criminal sexual act in the first degree and the May 2000 attempted robbery conviction.  Defendant admitted that he was the person named in the persistent violent felony information filed by the People, and did not challenge any of the allegations contained therein.  On July 6, 2010, he was sentenced as a persistent violent felony offender to 18 years to life

imprisonment.

In January 2013, defendant moved for an order setting aside his sentence pursuant to CPL 440.20 (1) on the ground that his adjudication as a persistent violent felony offender was illegally imposed and invalid because his May 2000 attempted robbery conviction was "unconstitutionally obtained" under Catu and could not serve to enhance his sentence. He also claimed that his counsel was ineffective for not challenging the People's use of the May 2000 conviction as a predicate offense. In an affirmation submitted in support of the motion, defense counsel who was present at the July 2010 sentencing acknowledged that he did not challenge the May 2000 conviction as unconstitutionally obtained and did not ask defendant whether the court had apprised him of the PRS component prior to his pleading guilty, and stated that, had he been aware that defendant's May 2000 conviction had been obtained without defendant having been apprised of the PRS component, he would have challenged the prior conviction.

The People countered that the Williams vacatur and defendant's 2010 resentencing that excised the PRS component rectified the Catu error and gave defendant what he had bargained for in 2000 when he pleaded guilty, such that the May 2000 conviction was not "unlawfully obtained." They argued that defendant's counsel at the 2010 plea proceeding could not have been ineffective for failing to raise a frivolous claim.

Defendant responded by arguing that although the

Williams vacatur effectively removed one year from the five-year
PRS term (four of which he had served), that action did not cure
the Catu error.

Supreme Court denied defendant's motion in its
entirety.  The Appellate Division reversed and granted
defendant's motion, holding that defense counsel was ineffective
for not challenging the constitutionality of the May 2000
conviction at the sentencing proceeding (116 AD3d 451, 451 [1st
Dept 2014]).  Relying on defense counsel's affirmation, the court
stated that "this was not a case where an attorney may have
reasonably believed that it would have been futile to raise a
Catu issue regarding the constitutionality, for predicate felony
purposes, of defendant's 2000 conviction, or that the law was
unclear on this issue" (id. at 452).  As such, according to the
court, defendant was "entitled to have his persistent felony
offender status litigated with proper assistance of counsel, at a
new adjudication and sentencing" (id.).

On remand, Supreme Court, utilizing only the 1980
predicate conviction, sentenced defendant as a second violent
felony offender to a 15-year determinate term with five years'
PRS.  The People filed a notice of appeal.

The People also moved pursuant to CPL 440.40 for an
order to set aside defendant's sentence and adjudicate defendant
a persistent violent felony offender.  Supreme Court denied the
motion.  The People filed a timely notice of appeal.  The

People's appeals from the judgment of resentence and the denial of the People's CPL 440.40 motion were consolidated.

The Appellate Division heard the consolidated appeals and unanimously affirmed, holding, as relevant here, that a Catu violation implicates both the state and federal constitutions, and that although the Catu error occurred in 2000 -- well before the Catu decision in 2005 -- the Catu decision applied retroactively (134 AD3d 411, 412 [1st Dept 2015]).

A Judge of this Court granted the People leave to appeal.

### III.

*CPL 400.15 (7) (b) and Federal Retroactivity*

In order to establish that a defendant is a second violent felony offender under CPL 400.15 (7) (a), the People must prove beyond a reasonable doubt that the defendant was convicted of the predicate violent felony offense in question.  Once that burden is met, the burden shifts to the defendant to establish that the prior conviction was "unconstitutionally obtained" (CPL 400.15 [7] [b]).  CPL 400.15 (7) (b) provides that "[a] previous conviction in this or any other jurisdiction which was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States must not be counted in determining whether the defendant has been subjected to a predicate violent felony conviction" (emphasis supplied).

Defendants contend that their Catu-infected convictions

that pre-dated our Catu decision were unconstitutionally obtained

under CPL 400.15 (7) (b) and therefore cannot be utilized as

predicate convictions to enhance their sentences.  Because these

appeals involve postconviction attacks on defendants' respective

prior convictions,[8] we begin our analysis with People v

Catalanotte (72 NY2d 641 [1988], cert denied 493 US 81 [1989]).

That case addressed whether the defendant's sentence as a second

felony offender could be predicated on a prior conviction that

"satisfied constitutional standards when obtained and ha[d]

survived postconviction collateral attack, but was obtained by

means which, if the indictment were tried [at present], would

violate [the] defendant's rights [to a public trial] under the

Sixth Amendment of the United States Constitution" (id. at 643).

In Catalanotte, the defendant unsuccessfully claimed on

direct appeal that he had been deprived of his right to a public

trial when the trial judge summarily excluded spectators from the

courtroom during the testimony of an undercover officer (see

id.).  Years after the defendant's appeal had become exhausted,

---

[8]  We recognize that defendant Smith's direct appeal from
the 2002 conviction is not technically "final" because he has not
perfected that appeal, and there is no indication from the record
that the People moved to dismiss that appeal.  Defendant Smith
has not provided any excuse as to why he has not pursued his
direct appeal.  As it stands, the direct appeal has remained
stagnant for more than a decade.  Because of the procedural
posture of this particular appeal, i.e., defendant Smith made a
postconviction motion attacking his predicate conviction based on
a Catu error, we will consider defendant's appeal as one
involving a collateral attack.

this Court held in another case that it was reversible error for a court to summarily close the courtroom simply because a witness was an undercover police officer (see id. at 643-644, citing People v Jones, 47 NY2d 409, 414-415 [1979], cert denied 444 US 946 [1979]).

In 1986, the defendant pleaded guilty to attempted robbery in the second degree, and the court adjudicated the defendant a second felony offender utilizing the 1971 conviction as a predicate over the defendant's objection that the 1971 conviction was "unconstitutionally obtained" under People v Jones (Catalanotte, 72 NY2d at 644). The defendant argued on appeal to this Court for the application of the Jones rule to prevent the enhanced punishment for the 1986 conviction, claiming that the prior conviction had been "unconstitutionally obtained" (id.). We began our analysis by setting forth the pertinent rule, namely, that

> "for purposes of determining whether a prior
> conviction 'was unconstitutionally obtained'
> [under CPL 400.21 (7) (b)][9] -- and thus may
> not be counted for predicate felony purposes
> -- the proper inquiry is to determine whether
> the conviction was obtained in violation of
> the defendant's rights as defined by the law
> at the time of the conviction or by present
> law which is properly applied to it under
> recognized principles of retroactivity" (id.
> at 643).

We explained that the clear import of the phrases "was

---

[9] This provision is substantially similar in language to CPL 400.15 (7) (b).

obtained" and "was unconstitutionally obtained" under CPL 400.21
(7) (b) necessarily indicated that the validity of the conviction
must "be determined as of the time it was entered," and that an
unconstitutional conviction is one that is "obtained in violation
of the defendant's constitutional rights, i.e., his rights as
defined by the law existing at the time the conviction was
obtained or by subsequent law applicable to the judgment under
principles of retroactivity" (id. at 644-645).  Significantly, we
noted that a "conviction does not become unconstitutional merely
because the law has changed subsequent to the defendant's direct
appeal of that conviction" (id. at 645).  As relevant here, we
held in Catalanotte that

> "[s]ince the predicate felony statute
> operates upon the prior conviction rather
> than the prior practice, accepted principles
> of retroactivity must be applied to determine
> whether a conviction 'was unconstitutionally
> obtained' and thus may not be counted when
> the People seek to impose an enhanced
> sentence. Under those rules, a defendant is
> entitled to the benefit of any change in the
> law if the change occurs before his
> conviction becomes final (citation omitted)
> or, if the right at stake is such that the
> law has engrafted an exception to the
> traditional rule to permit collateral attack
> on judgments of conviction after they have
> become final" (id. at 645 [citations omitted]
> [emphasis supplied]).

Applying that rule, we held that the 1971 conviction
met neither criteria, noting that the court's closure of the
courtroom in 1971 had complied, at that time, with the existing
legal requirements for a public trial (see id. at 645), and,

while this Court had eventually declared a similar procedure unconstitutional, it did not make the Jones rule retroactive, nor did it require a finding that the predicate conviction had been "unconstitutionally obtained" (id. at 645-646).  We explained that "[t]he logic of such interpretation is manifest when one considers that the proper meaning to be given to broadly stated constitutional commands, such as due process of law and right to a public trial, changes constantly" (id. at 646 [emphasis supplied]).

Applying the first Catalanotte rule here, i.e., that a prior conviction may not be counted for predicate felony purposes if "the conviction was obtained in violation of the defendant's rights as defined by the law at the time of the conviction" (Catalanotte, 72 NY2d at 643), it is evident that the law at the time of defendants' respective predicate convictions in 2002 and 2000 did not require automatic vacatur for a court's failure to pronounce PRS.  Although at the time of defendants' predicate convictions the law required a defendant be informed of the direct consequences of a guilty plea, i.e., those that have "a definite, immediate and largely automatic effect on [a] defendant's punishment" (Ford, 86 NY2d at 403), the law also required that defects in plea allocutions could not result in a reversal absent a showing of prejudice (see People v Nixon, 21 NY2d 338, 355 [1967], cert denied 393 US 1067 [1969] ["It should never be enough to undo a plea because of some omission in

inquiry at the time of the plea without a showing of prejudice"]).  Indeed, in the PRS cases that preceded our Catu decision, the Appellate Departments required a showing of prejudice (see e.g. People v Mason, 2 AD2d 272, 272 [1st Dept 2003], lv denied 1 NY3d 630 [2004] [direct appeal]; People v Ballinger, 12 AD3d 686, 688 [2d Dept 2004] [CPL 440.10 motion]; People v Bonilla, 6 AD3d 1059, 1060 [4th Dept 2004] [CPL 440.10 motion] [relying on Nixon]; see also People v Melio, 304 AD2d 247, 252 [2d Dept 2003] [direct appeal].[10]

    And, in People v Catu (2 AD3d 306 [1st Dept 2003], revd 4 NY3d 242), the Appellate Division specifically held that the defendant, who made his motion pursuant to CPL 440.10, was not entitled to plea vacatur because he failed to show that had he known of the PRS component he would not have pleaded guilty (see id. at 306).  In support of that contention, the Appellate Division relied on United States v Timmreck (441 US 780 [1979]).  In that case, the United States Supreme Court held that a defendant was not entitled to vacatur of his sentence because the District Court had failed to apprise him at the time of his plea that his prison sentence also included a three-year mandatory

---

    [10] In People v Goss (286 AD2d 180 [3d Dept 2001]), the Third Department held that a defendant was entitled to withdraw his plea prior to sentencing because he had not been advised of the PRS component (see id. at 184).  Notably, however, the Goss court addressed (but rejected) the People's argument that County Court's failure to advise him of the PRS component was harmless (see id.).

minimum special parole term, noting that the defendant did not argue that he was unaware of the mandatory term or that he would not have pleaded guilty had the judge apprised him of the mandatory term (see id. at 783-784).[11]

In light of the foregoing, neither defendant Smith's nor Fagan's conviction was obtained in violation of the law as it existed at the time of their respective convictions. Both state and federal law required that a defendant demonstrate that he would not have pleaded guilty had he known about a mandatory term of his sentence. It was not until our 2005 decision in Catu that a defendant was entitled to automatic vacatur.

Nor does application of the second Catalanotte rule -- that a prior conviction may not be used as a predicate conviction where the conviction was obtained in violation of "present law which is properly applied to it under recognized principles of retroactivity" (Catalanotte, 72 NY2d at 643) -- lend support to defendants' argument that they should be permitted to mount a postconviction challenge to a final predicate conviction. CPL 400.15 (7) (b) expressly refers to challenges of previous convictions "obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United

---

[11]  Notably, the federal standard requires a defendant to demonstrate that the court's error during the plea proceeding affected the defendant's decision to accept the plea (see United States v Westcott, 159 F3d 107, 112-113 [2d Cir 1998], cert denied 525 US 1084 [1999]; Caputo v Henderson, 541 F2d 979, 984 [2d Cir 1976]).

States," but, assuming for the purposes of this appeal that CPL 400.15 (7) (b) applies to violations of the New York Constitution, neither state nor federal retroactivity principles would permit these defendants to mount a postconviction attack on their predicate convictions.[12]

Because defendants Smith and Fagan claim that their prior convictions were "unconstitutionally obtained" under the Unites States Constitution, we will first address the application of federal retroactivity rules to the instant appeals.

In Teague v Lane (489 US 288 [1989]), the United States Supreme Court, in addressing the issue of retroactivity for cases on collateral review, recognized that, "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced" (id. at 310; see Whorton v Bockting, 549 US 406, 419 [2007] [under Teague, an old rule will apply on direct and collateral review, whereas a new rule applies to only cases that are still on direct review]). That holding raises the pertinent question as to what constitutes a "new rule" for purposes of retroactivity analysis. The Teague court explained that "a case announces a new rule when

---

[12]  In light of this assumption, we need not address the People's argument that our holding in People v Pignataro (22 NY3d 381 [2013]) established that a Catu error constitutes only a violation of the state constitution, thereby taking it out of the realm of CPL 400.15 (7) (b).

it breaks new ground or imposes a new obligation on the States or the Federal Government (citations omitted).  To put it differently, a case announces a new rule if the result was not <u>dictated</u> by precedent existing at the time the defendant's conviction became final" (<u>Teague</u>, 489 US at 301 [citations omitted] [emphasis in original]).[13]  A result is not deemed "dictated by precedent," however, "unless it would have been apparent to all reasonable jurists" (<u>Lambrix v Singletary</u>, 520 US 518, 527-528 [1997]).

As with most rules, there are exceptions.  As relevant here, a new rule will be applied retroactively if it is a "watershed rule[] of criminal procedure" that implicates "the fundamental fairness and accuracy of the criminal proceeding" (<u>see</u> <u>Saffle v Parks</u>, 494 US 484, 495 [1990], citing <u>Teague</u>, 489 US at 311).[14]  This exception is limited "to those new procedures without which the likelihood of an accurate conviction is seriously diminished" (<u>Teague</u>, 489 US at 313).  Absent an applicable exception, "[a]ll other new rules of criminal procedure must be applied in future trials and in cases pending

---

[13]  In contrast, an "old rule" is one that applies a well-established constitutional principle to a new circumstance, and, as such, is always retroactive (<u>Yates v Aiken</u>, 484 US 211, 216 [1988]; <u>People v Eastman</u>, 85 NY2d 265, 275 [1995]).

[14]  The other exception, not applicable here, is when the new rule "place[s] certain kinds of primary individual conduct beyond the power of the States to proscribe . . ." (<u>People v Baret</u>, 23 NY3d 777, 791 [2014], quoting <u>Danforth v Minnesota</u>, 552 US 264, 266 [2008]).

on direct review, but may not provide the basis for a federal collateral attack on a state-court conviction" (Danforth v Minnesota, 552 US 264, 266 [2008] [summarizing the Teague rule]).

Defendants contend that our opinion in Catu merely applied the well-established constitutional principle that a defendant must be apprised of the direct consequences of his or her plea in order for the plea to meet the "knowing, intelligent and voluntary" requirement (Ford, 86 NY2d at 403).  To that end, defendants are partially correct, since prior to the Catu decision, Penal Law § 70.45 (1) required that "[e]ach determinate sentence . . . include[], as a part thereof, an additional period of [PRS]" (Penal Law § 70.45 [1] [emphasis supplied]).  All four Appellate Departments were in agreement that PRS was a direct consequence of a guilty plea (see Ballinger, 12 AD3d at 687-688; Bonilla, 6 AD3d at 1060; Mason, 2 AD3d at 272-273; Goss, 286 AD2d at 184).  However, Catu did more than simply apply a long-held constitutional principle to a new circumstance -- it created a new rule calling for automatic vacatur of the plea without requiring the defendant to demonstrate prejudice, which plainly differed from prior law (see Nixon, 21 NY2d at 355 ["It should never be enough to undo a plea because of some omission in inquiry at the time of the plea without a showing of prejudice"]).  Significantly, the Appellate Division's Catu decision focused on the prejudice component (2 AD3d at 306), and did not address the issue whether PRS was a direct consequence of

a plea, which, by that point, was well established among the four Appellate Division Departments.  Therefore, our determination in Catu announced a new rule that a defendant who is not apprised of PRS need not demonstrate prejudice in order to obtain a reversal and plea vacatur, and given the state of the law pre-Catu, our determination in Catu was most certainly not dictated by precedent.

Nor does Catu fall within an applicable recognized exception that would permit a new rule to be retroactively applied on collateral attack because it did not constitute a "watershed rule[] of criminal procedure," i.e., it is not a "'new procedure[] of fundamental fairness without which the likelihood of an accurate conviction is seriously diminished'" (People v Baret, 23 NY3d 777, 784 [2014], cert denied __ US __, 135 S Ct 961 [2015], quoting Teague, 489 US at 311, 313]).  The United States Supreme Court has stated that this particular exception is an "extremely narrow" one (Schriro v Summerlin, 542 US 348, 352 [2004]), and has repeatedly analogized such a rule to the right to counsel established by Gideon v Wainwright (372 US 335 [1963]) (see Whorton, 549 US at 419 [rejecting retroactive application of Crawford v United States (541 US 36 [2004])]; Teague, 489 US at 311-312; see also Schriro, 542 US at 355-356 [rejecting retroactive application of Ring v Arizona (536 US 584 [2002])]). Gideon -- which held that counsel must be appointed for any indigent defendant charged with a felony -- is the lodestar case

for this exception because "[w]hen a defendant who wishes to be represented by counsel is denied representation . . ., the risk of an unreliable verdict is intolerably high" (Whorton, 549 US at 419 [citations omitted]).

In order to apply a new "watershed rule" retroactively, the rule must meet two requirements, namely, it "must be necessary to prevent an impermissibly large risk of an inaccurate conviction . . . [and it] must alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding" (Whorton, 549 US at 418 [internal citations and quotations omitted]). The latter requirement mandates that the new rule "constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding," and the United States Supreme Court has "looked to the example of Gideon" in analyzing the requirement (id. at 421).

Our Catu "automatic vacatur" rule did not constitute such a "watershed rule" comparable to the determination in Gideon. Catu was not necessary to prevent an impermissibly large risk of an inaccurate conviction, and it is doubtful that the failure of the courts to apprise defendants Smith and Fagan of the PRS component resulted in them pleading guilty to crimes that they did not commit. Indeed, when presented with their prior convictions, defendants Smith and Fagan acknowledged that they were the individuals mentioned in the predicate felony statements filed by the People, and that they did not wish to challenge any

of the allegations contained within their respective statements.

Similarly, Catu's automatic vacatur rule did not "alter our understanding of the bedrock procedural elements essential to the fairness of a proceeding" (Whorton, 549 US at 420, quoting Sawyer v Smith, 497 US 227, 242 [1990] [emphasis in original]). To be sure, although Catu is a significant decision that created a rule that called for automatic vacatur of convictions where a defendant is not apprised of the PRS component of the sentence, the rule itself is not on par with Gideon. Indeed, as noted above, the federal rules do not call for automatic vacatur, but require a defendant to show that an error during the plea proceeding affected the defendant's decision to plead guilty (see Westcott, 159 F3d at 112-113; Caputo, 541 F2d at 984).

IV.

*State Retroactivity*

Assuming for the sake of this appeal only that CPL 400.15 (7) (b) allows a defendant to challenge a predicate conviction obtained as a violation of his state constitutional right, state retroactivity principles militate against a retroactive application of Catu. In People v Pepper (53 NY2d 213 [1981], cert denied 454 US 967 [1981]), this Court adopted a three-part test to assist in determining whether a new precedent should be afforded a retroactive application (id. at 220). We explained that courts should weigh and examine (1) "the purpose to be served by the new standards"; (2) "the extent of the

reliance by law enforcement authorities on the old standards";
and (3) "the effect on the administration of justice of a
retroactive application of the new standards" (id.).  The second
and third factors are given substantial weight only "'when the
answer to the retroactivity question is not to be found in the
purpose of the new rule itself" (id. [citation omitted]).  "Thus,
where otherwise there could be a complete miscarriage of justice,
current constitutional standards that go to the heart of a
reliable determination of guilt or innocence have been
substituted for those in effect at the time of trial" (id. at
221).  As a general rule, the Pepper rules "disfavor
retroactivity" (Baret, 23 NY3d at 799).

In Pepper, we were asked to determine the retroactivity
of our holding in People v Samuels (49 NY2d 218 [1980]), where
"we held that once an accusatory instrument has been filed a
defendant cannot waive his constitutional right to counsel save
in the presence of counsel" (Pepper, 53 NY2d at 217, citing
Samuels, 49 NY2d 218).  Incidentally, we held in Pepper that
Samuels retroactively applied to defendants whose direct appeals
were not final at the time it was decided; however, we refused to
apply it to those defendants who had exhausted their direct
appeals, noting "only complete retroactivity could make Samuels
applicable [in the latter case].  And that, impermissibly, would
mean that every defendant to whose case it was relevant, no
matter how remote in time and merit, would become its

beneficiary" (id. at 222).

Although a court's failure to advise a pleading defendant of the PRS component constitutes a due process violation, it cannot be said that the purpose of the Catu rule -- automatic vacatur -- has any bearing on the defendant's guilt or innocence.  It is highly unlikely that defendants who pleaded guilty to criminal offenses that required determinate sentences but did not have PRS pronounced pleaded guilty to crimes that they did not commit.  Thus, while PRS is certainly an important component of a sentence, a court's failure to inform a defendant of that component is not likely to result in the conviction of an innocent person.

Nor do the second and third factors weigh in favor of retroactivity.  Prior to these particular appeals, prosecutors, defense counsel and courts had relied extensively on the legitimacy of pre-Catu predicate felony convictions for enhancement purposes where PRS had not been pronounced.  Moreover, retroactive application of Catu would do little to advance the administration of justice as it would render useless prior predicate convictions as a result of a sentencing error that bore no relationship to the defendant's guilt or innocence.  The Legislature, in an attempt to remedy the Catu errors committed between September 1, 1998 and June 30, 2008, enacted Penal Law § 70.85, which granted the court, with the consent of the district attorney, the authority to re-impose the original

determinate sentence without any term of PRS (see Penal Law §
70.85; L 2008, ch 141, § 2). This essentially created an
exception to Penal Law § 70.45's requirement that a PRS component
be added to all determinate sentences, such that a sentence
pronounced without PRS under CPL 70.85 nonetheless constitutes a
legal sentence.

Finally, in addition to the statutory avenues of relief
that have been enacted to assist a defendant in rectifying Catu
errors, our case law permits a defendant to raise an unpreserved
Catu error on direct appeal (see People v Louree, 8 NY3d 541,
545-546, n [2007] [also holding that a defendant may not raise a
Catu objection by way of a CPL article 440 proceeding]).
Moreover, we have held that because there is little distinction
between a Catu claim and a challenge to the adequacy of a plea
allocution, "[i]n the absence of justification for a defendant's
failure to pursue [that] issue on direct appeal . . ., [a Catu]
claim may not be raised in a CPL 440.10 motion" (People v
Stewart, 16 NY3d 839, 841 [2011]). Based on the foregoing, the
application of the Pepper test does not favor state
retroactivity.

V.

*Conclusion*

In People v Smith, the Appellate Division erred in
holding that Catu applies retroactively to pre-Catu convictions.
Accordingly, the Appellate Division order should be reversed, the

resentence vacated and the original sentence reinstated.

In <u>People v Fagan</u>, the Appellate Division likewise erred in determining that defendant Fagan was entitled to challenge his pre-<u>Catu</u> predicate conviction on the ground that <u>Catu</u> applied retroactively.  Accordingly, the Appellate Division order should be reversed, the resentence vacated and the original sentence reinstated.

People v Smith
People v Fagan

Nos. 149 & 150

DiFIORE, Chief Judge (concurring):

For the reasons that follow, I concur in the result.
In my view, defendants' original convictions were
constitutionally obtained under this Court's jurisprudence and
permissibly used as predicate convictions to enhance defendants'
sentences.

In 1998, with the adoption of Jenna's Law, the
legislature "eliminat[ed] parole for all violent felony offenders
. . . [and] enacted a scheme of determinate sentencing to be
followed by periods of mandatory postrelease supervision" (PRS)
(see People v Catu, 4 NY3d 242, 244 [2005]; Penal Law § 70.45
[1]).  The statutory mandate of PRS, which continues beyond a
defendant's release from his or her maximum determinate term of
incarceration, had "'a definite, immediate and largely automatic
effect on defendant's punishment'" (Catu, 4 NY3d at 244, quoting
People v Ford, 86 NY2d 397, 403 [1995]).  The failure of many
trial courts to properly impose that PRS term, in connection with
both trial and plea convictions, has resulted in a chaotic
landscape and led to a litany of cases before this Court,
beginning with People v Catu (4 NY3d 242).

- 1 -

In Catu, we addressed a trial court's failure to advise the defendant of his PRS term in connection with his bargained-for sentence on a guilty plea where the defendant's status as a predicate felony offender mandated that his sentence include a five-year PRS period. The defendant in Catu sought the vacatur of his plea on direct appeal and moved for the same relief through a CPL 440.10 motion, seeking to return to his pre-plea position before the trial court. We held that PRS "is a direct consequence of a criminal conviction" such that the failure to inform a defendant of his or her PRS term prior to taking a guilty plea violated the long-standing due process requirement that pleas be entered "knowingly, voluntarily and intelligently" (id. at 244, 245). We further held that the remedy for that error is to permit a defendant to vacate his or her plea and return to the trial court (see id.).[1] As we later explicated, "vacatur of the plea is the remedy for a Catu error since it returns a defendant to his or her status before the

_____

[1] The majority's retroactivity analysis is predicated on the basis that the Catu remedy of automatic vacatur of the plea did not exist before our 2005 decision (see maj opn at 18). However, at the time both defendant Smith and defendant Fagan pleaded guilty, the law allowed defendants to challenge the voluntariness of their pleas if the courts imposed sentences in excess of that for which defendants bargained and were promised on the record (see e.g. People v Selikoff, 35 NY2d 227 [1974]; People v Esposito, 32 NY2d 921 [1973]). Thus, where a defendant pleaded guilty in exchange for a promised determinate sentence and a court imposed PRS without his or her knowledge, he or she could allege, even at the pre-Catu stage, that the guilty plea was involuntary and unconstitutionally obtained (see People v Harris, 61 NY2d 9 [1983]; CPL 400.15 [7] [b]).

constitutional infirmity occurred," i.e., the pre-plea status
where defendant faces the risk of an even greater determinate
sentence and the certain imposition of PRS if convicted (People v
Hill, 9 NY3d 189, 191 [2007]).

Prior to 2008, because Penal Law § 70.45 (1) mandated
that determinate sentences include a period of PRS, sentences
without the proper imposition of PRS were illegal.  Thus, the
remedy in cases where the trial court failed to advise defendant
at the time of the guilty plea of PRS in connection with the
bargained-for sentence was a resentencing.  Since the conviction
was on a guilty plea, the vacatur of that plea was also required.
The court could not merely grant specific performance of the
promised, and more lenient, sentence.[2]  However, in 2008 the
legislature enacted Penal Law § 70.85, "[t]ransitional exception
to determinate sentencing laws," creating an alternative remedy
for the trial court's failure to advise a defendant of his or her
PRS term at the time of his or her guilty plea.[3]  The statute
authorizes the court to "re-impose the originally imposed
determinate sentence of imprisonment without any term of [PRS],"

---

[2] Notably, we rejected an argument that this error could be
cured by resentencing the defendant such that the prison term and
PRS term together are within the range of the sentence promised
to defendant in connection with the plea (see Hill, 9 NY3d at
192; People v Louree, 8 NY3d 541, 545 [2007]; People v Van
Deusen, 7 NY3d 744, 746 [2006]; but see People v Collier, 22 NY3d
429 [2013]).

[3] This remedy is available for determinate sentences imposed
between September 1, 1998 and June 30, 2008.

and permits that sentence to "be deemed a lawful sentence," so long as the district attorney consents (Penal Law § 70.85). Accordingly, with section 70.85, the legislature carved out an exception to Penal Law § 70.45 thereby "allowing a determinate sentence without a term of PRS to stand as a legal sentence" (People v Pignataro, 22 NY3d 381, 384 [2013]). The statute relegates PRS to a possible consequence in plea cases in the relevant time period, rather than a definite, immediate, and automatic part of a defendant's sentence. We later sanctioned this transitional remedy as "a constitutionally permissible legislative remedy for the defectiveness of the plea" (id. at 387). Defendants are effectively given more lenient sentences while their plea convictions are afforded a much needed finality.

In a related line of cases, we addressed a trial court's error in failing to pronounce PRS at sentencing following either a trial verdict or a knowing, voluntary and intelligent guilty plea where a PRS term was included on the commitment sheet, which reflects the court's commitment of the defendant to the custody of the Department of Correctional Services (DOCS)[4] (see People v Sparber, 10 NY3d 457 [2008]; CPL 380.20).[5] We held

---

[4] While this department is now referred to as the Department of Corrections and Community Supervision (DOCCS), it was known as DOCS at the time relevant to these appeals and, therefore, will be referred to as DOCS throughout.

[5] In Sparber, the defendant was not informed of his PRS term prior to pleading guilty, and the court failed to pronounce PRS at sentencing, but defendant's commitment sheet reflected a five-

that the "sole remedy" for that procedural error "is to vacate the sentence and remit for a resentencing hearing so that the trial judge can make the required pronouncement" (Sparber, 10 NY3d at 471). As we later clarified in a matter involving a trial conviction, that resentencing proceeding "is not a plenary proceeding," but is "limited to remedying this specific procedural error," i.e., the court's failure to pronounce the sentence of PRS (People v Lingle, 16 NY3d 621, 635 [2011]).

Then there were the cases where the sentence of PRS was never imposed as the trial court failed to pronounce the PRS term at sentence and also failed to include any such sentence on the commitment order to DOCS. These defendants without a PRS sentence would be released from prison prior to the expiration of their determinate sentences without any supervision, thus serving less punishment than originally imposed by the trial court and less punishment than statutorily required. In those cases, in an attempt to ensure the defendant was serving a legal sentence under section 70.45, DOCS administratively imposed PRS (see Matter of Garner v New York State Dept. of Correctional Servs., 10 NY3d 358 [2008]). This extrajudicial attempt to impose PRS at a postjudgment stage was illegal. Specifically, we held that PRS, as any sentence, must be pronounced by the court at

---

year PRS term (see id.). The defendant rejected the remedy of the vacatur of his plea under Catu, seeking a more lenient sentence by having his PRS term expunged (see id. at 466).

sentencing and, therefore, administrative imposition of the PRS term by DOCS was prohibited (see id. at 362). However, the remedy for that error, too, was a resentencing proceeding in the trial court (see e.g. People v Velez, 19 NY3d 642, 645-646 [2012]).

In order to facilitate such resentencing proceedings, where there was no imposition of PRS in a sentence by the trial court, the legislature passed Correction Law § 601-d. The statutory procedure allowed for the resentencing of persons "in DOCS's custody, or under its supervision, [that were] given a determinate sentence which was required by law to include PRS, but where DOCS's records do not show that a PRS term was actually imposed" (id. at 646). Such a defendant is considered a "designated person" under the statute and the department is instructed to "make notification of that fact to the court that sentenced such person, and to the inmate or releasee," at which point "[t]he court shall promptly seek to obtain sentencing minutes, plea minutes and any other records and shall . . . conduct any reconstruction proceedings that may be necessary" (Correction Law § 601-d [2], [4] [b]).

The postjudgment imposition of PRS proved somewhat problematic and, in People v Williams (14 NY3d 198 [2010]), we placed a temporal limitation on a court's ability to impose PRS in these situations. We held that "after release from prison, a legitimate expectation in the finality of a sentence arises and

the Double Jeopardy Clause prevents reformation [of the sentence] to attach a PRS component to the original completed sentence" (id. at 217). Put differently, "once a defendant is released from custody and returns to the community after serving the period of incarceration that was ordered by the sentencing court, and the time to appeal the sentence has expired or the appeal has been finally determined . . . the Double Jeopardy Clause prevents a court from modifying the sentence to include a period of [PRS]" (id. at 219-220). The corrective relief by the court for the double jeopardy violation is the vacatur of the illegal resentence and the reinstatement of the original sentence (id. at 222). Importantly, while the Double Jeopardy Clause prohibits untimely imposition of any new punishment, including PRS, the constitutional error is a function of the resentencing court acting outside of its authority. It does not affect a defendant's original conviction (see e.g. People v Jordan, 15 NY3d 727 [2010] [reinstating original sentence where defendant resentenced to PRS in violation of Double Jeopardy Clause]).

Here, the constitutional infirmity that both defendants argue rendered their respective original convictions[6] "unconstitutionally obtained" within the meaning of CPL 400.15 (7) (b) is the failure of the trial courts to impose PRS as part of their original judgment or otherwise advise defendants in

---

[6] "Original conviction" refers to defendant Smith's 2002 conviction and defendant Fagan's 2000 conviction.

their original proceeding that the sentence included a mandatory period of PRS.  Defendants' essential argument is that this is a Catu error that infected their guilty pleas and requires disqualification of those convictions as predicate convictions. With that in mind, I now turn to the cases before us.  In doing so, I adopt the facts of the majority, but highlight those relevant to my analysis.

*People v Roni Smith*

In November 2001, defendant Smith pleaded guilty to robbery in the first degree, a violent felony (Penal Law § 70.02 [1]; Penal Law § 160.15 [4]).  Defendant, when sentenced in January 2002, was never sentenced to PRS as he was not advised that his bargained-for sentence would include a mandatory PRS term, and defendant's commitment sheet reflected no such term. Nevertheless, upon his release from prison in April 2007, DOCS administratively imposed a PRS term.  In October 2008, this illegal imposition of PRS was captured and defendant was resentenced pursuant to Correction Law § 601-d based on the omission of a PRS term from his sentence for his 2002 conviction. During that resentencing proceeding, the trial court admitted that it did not have possession of the minutes of defendant's 2001 plea proceeding and, thus, could not be sure if it had advised defendant of the mandatory PRS term.  Pivotally, defendant agreed to "waive waiting for the actual minutes to arrive and waive any claims he had with respect to the plea" so

long as the court "grant[ed] him the minimum post-release period" of 2 1/2 years (the maximum possibility being 5 years). The record reflects that the court specifically asked defense counsel the following: "You're asking me to sentence [defendant] to the minimum period of post-release supervision and not withdraw [defendant's] plea. Is that what you're talking about?", to which defense counsel responded "[defendant] indicated he's prepared to do that if the prosecutor's office would be willing to go along with it." The court then sentenced defendant to the minimum PRS period.

Based on this exchange, defendant, having chosen not to seek the remedy of vacatur of the guilty plea and the opportunity to be restored to a pre-plea status, cannot now claim his original conviction was unconstitutionally obtained (see generally People v DeValle, 94 NY2d 870 [2000]).

Defendant was not actually sentenced to PRS in 2002. Nor was he sentenced to a PRS term upon the administrative imposition of PRS by DOCS, as that action was a nullity (see Garner, 10 NY3d at 360). To rectify that error, defendant was brought back to the trial court in 2008 to be resentenced. There, before the imposition of sentence, defendant declined to seek the Catu remedy of vacatur of his plea (and return to uncertain pre-plea status), asking instead for the minimum 2 1/2-year PRS period. Consequently, defendant effectively waived any argument that his plea was not knowingly, voluntarily and

intelligently entered or that it was otherwise unconstitutionally obtained.

To the extent defendant could invoke our 2010 decision in Williams to render the untimely imposition of PRS at resentencing in 2008 a violation of Double Jeopardy, that illegal sentence would not affect the legality of the underlying plea conviction. "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner" (United States v DiFrancesco, 449 US 117, 135 [1980] [citation and quotation marks omitted]). Indeed, after electing to maintain his guilty plea with knowledge of the imposition of PRS, after the 2008 resentencing defendant was in the same position as any defendant with a lawfully obtained conviction and an illegal sentence. The only appropriate corrective relief is the vacatur of the illegal resentence and the reinstatement of the original sentence (see Williams, 14 NY3d at 222). Defendant cannot now retain the benefit of the bargained-for plea, but eliminate the 2002 conviction for consideration as a predicate felony conviction based on the corrected Catu error.

*People v Keith Fagan*

In April 2000, defendant Fagan pleaded guilty to attempted robbery in the first degree. Defendant was not advised that his sentence would include a mandatory PRS term, nor was such term pronounced at sentencing or included in the court's

commitment order.  Nevertheless, upon release in March 2006, DOCS administratively imposed a PRS term.  This illegal imposition of PRS was captured in January 2009 and defendant also was resentenced in the trial court pursuant to Correction Law § 601-d based on the omission of a PRS term from his sentence for his 2000 conviction.  However, that resentence violated the Double Jeopardy Clause under this Court's decision in Williams because defendant had already completed his determinate sentence and served a portion of his PRS term.  In March 2010, the illegal imposition of PRS was vacated by the trial court on these grounds and defendant's original sentence was restored.  Thus, as of that time -- prior to the use of the original conviction as a predicate felony for enhanced sentencing -- defendant's sentence for his 2000 conviction was the originally imposed determinate term of seven years, with no PRS, as promised to defendant at the time of his guilty plea.

Penal Law § 70.85 specifically provides that, as an alternative to the remedy of vacatur of the plea, a court can "re-impose the originally imposed determinate sentence of imprisonment without any term of [PRS]."  Here, defendant received that lawful non-PRS sentence.  Defendant's original sentence for his 2000 conviction was re-imposed and the intervening attempts to impose PRS were nullified (under Williams).  Thus, like defendant Smith, defendant Fagan's original conviction on his guilty plea was not infected by a Catu

error, as the sentence actually promised at the time of the plea was the sentence actually imposed.  Having received the benefit of the "constitutionally permissible legislative remedy for the defectiveness of the plea" in section 70.85 (Pignataro, 22 NY3d at 387), no constitutional infirmity remained with respect to defendant's original conviction.  The fact that, due to the court's resentencing error at the postjudgment stage, defendant Fagan served some portion of his PRS term (some of which is within the range of the expected determinate sentence imposed) and may be entitled to some other form of relief does not undermine the lawfulness of that original conviction (see DiFrancesco, 449 US at 135 [noting that the wrong move of a sentencing judge does not invalidate the conviction]).

As of March 2010, defendant's 2000 conviction was a lawful conviction for which he received a legal sentence.  In fact, defendant received the precise sentence for which he bargained, undermining any argument that his guilty plea was not knowingly, voluntarily and intelligently entered.  Therefore, nothing barred the use of the 2000 conviction as a predicate felony conviction in connection with defendant's sentence for his 2010 conviction.

For those reasons, I would reverse the Appellate Division order in both matters, vacate defendants' resentences, and reinstate defendants' original sentences.

The People of the State of New York v Roni Smith
The People of the State of New York v Keith Fagan

Nos. 149 & 150


RIVERA, J.(dissenting):

This Court has long abided by the cardinal principle that "a conviction obtained in violation of one's constitutional rights may not be used to enhance punishment for another offense" (People v Harris, 61 NY2d 9, 16 [1983]).  That is, until now.

In these appeals, the majority has determined that defendants' respective convictions may serve as a predicate for sentencing purposes because the constitutional defect complained of was first recognized in People v Catu (4 NY3d 242 [2005]), and has no retroactive application to defendants' cases.  This conclusion is not supported by the case law, which clearly shows that Catu was based on due process guarantees already well established in both federal and state jurisprudence.  As a consequence, and unsurprisingly, we previously applied Catu retroactively.  The legislature acted on the same understanding and passed Penal Law § 70.85 in response to Catu and its progeny on the assumption that all tainted sentences, going back to 1998, were subject to the Catu holding.  Therefore, because distinguishing defendant's convictions here belies case law, legislation, and fairness, I dissent.

In addition to the general constitutional prohibition

on the use in sentencing of unconstitutionally obtained prior convictions (People v Harris, 61 NY2d at 16, citing Burgett v Texas, 389 US 109, 115 [1967]), New York has a statutory ban on consideration of such convictions as predicate offenses. Pursuant to CPL 400.15 (7) (b), "[a] previous conviction in this or any other jurisdiction which was obtained in violation of the rights of the defendant under the applicable provisions of the constitution of the United States must not be counted in determining whether the defendant has been subjected to a predicate violent felony conviction."[1]  An unconstitutional conviction is one "obtained in violation of the defendant's constitutional rights, i.e. [a defendant's] rights as defined at the time the conviction was obtained or by subsequent law applicable to the judgment under principles of retroactivity" (People v Catalanotte, 72 NY2d 641, 644-45 [1988]).

       Here, the relevant due process rights were known and clearly defined at the time of the defendants' respective convictions.  In the context of guilty pleas, both the United States Supreme Court and this Court have long held that a plea must be knowing and voluntary for the plea to comport with the due process guaranteed to criminal defendants (Boykin v Alabama, 395 US 238, 242 [1969]; Chaipis v State Liquor Auth., 44 NY2d 57,

_____

       [1] As I discuss, since defendants' convictions implicated their federally recognized due process rights, I have no occasion to address the people's argument that CPL 400.15 (7) (b) does not apply to state constitutional violations.

63 [1978]; People v Hill, 9 NY3d 189, 191 [2007], citing NY
Const, Art 1, § 6; People v Ford, 86 NY2d 397, 403 [1995];
McCarthy v United States, 394 US 459, 466 [1969]).  As an
additional protection of a defendant's rights, "[a] trial court
has a constitutional duty to ensure that a defendant, before
pleading guilty, has a full understanding of what the plea
connotes and its consequences" (Ford, 86 NY2d at 402-403
[internal cites omitted]).  To that end, "the record must be
clear that 'the plea represents a voluntary and intelligent
choice among the alternative courses of action open to the
defendant,'" and the court must advise the defendant of those
direct consequences of the plea "which ha[ve] a definite,
immediate and largely automatic effect on defendant's punishment"
(id. at 403).  In Catu, in reliance on these due process
requirements, the Court stated that the mandatory postrelease
supervision (PRS) portion of a sentence is "a direct consequence
of a criminal conviction" (4 NY3d at 244).  Accordingly, "the
failure of a court to advise of [PRS] requires reversal of the
conviction" (id. at 245), because "the constitutional defect lies
in the plea itself and not in the resulting sentence" (Hill, 9
NY3d at 191).

        As this discussion illustrates, the Court in Catu did
not rely on amorphous or unsettled concepts of due process or
break new legal ground.  It simply applied existing doctrine
"defined by the law at the time the conviction was obtained"

(Catalanotte, 72 NY2d at 645), to the facts before it (see Ford, 86 NY2d at 403 [explaining the plea is not voluntary when a defendant is not told of the direct consequences of guilty plea and defining "direct consequence" as those that are "definite, immediate and largely automatic" upon entry of the plea]).

The same rules apply here. The courts in defendants' cases failed to advise them of the PRS portion of their sentences. As a consequence, these defendants' convictions were obtained in violation of their recognized due process rights, rendering their respective pleas constitutionally defective (People v Catu, 4 NY3d 242, 245 [2005]; maj. at 2). Under Harris and CPL 400.15, the convictions may not serve as a predicate offense to enhance their sentences for a future offense (Harris, 61 NY2d at 16; CPL 400.15 [7] [b]).

This would not be the first time that this Court has applied Catu retroactively. In Pignataro, defendant pleaded guilty to attempted assault and was orally sentenced to a fifteen-year determinate sentence in February 2001, without being advised of his mandatory PRS (People v Pignataro, 22 NY3d 381, 383 [2013]). Thereafter, defendant did not perfect his direct appeal, and instead commenced post-conviction proceedings, first to challenge the constitutionality of his guilty plea and later to challenge his Penal Law § 70.85 resentencing (id.). The provision was enacted in 2008, in the wake of Catu and a subsequent line of cases addressing various sentencing

challenges, and "authorizes a trial court to 're-impose,' with
the People's consent, 'the originally imposed determinate
sentence of imprisonment without any term of [PRS]'" (Pignataro,
22 NY3d at 384, quoting Penal Law § 70.85). We would have no
occasion to consider Pignataro's challenge to Penal Law § 70.85
-- a legislative remedy specifically designed to address Catu
errors -- if the plea was not obtained in violation of the
defendant's constitutional rights, making his sentence unlawful
and subject to the legislative "cure."[2]

Our determination that Penal Law § 70.85 was "a
constitutionally permissible legislative remedy" for a defective
plea establishes that while the type of relief may change, the
underlying constitutional violation remains the same.  Certainly
that was the Legislature's understanding when it passed Penal Law
§ 70.85, creating a "transitional exception to determinate
sentencing laws" applicable only to cases in which a sentence
without PRS was imposed between September 1, 1998, the year the
Legislature made PRS a mandatory component of determinate
sentencing, and the 2008 date when Section 70.85 took effect (L

---

[2] The majority makes too much of the short memorandum order
in People v Stewart (16 NY3d 839 [2011]), suggesting that the
decision supports denying retroactive application of Catu (maj at
27).  The summary opinion in Stewart merely recognized the
obvious -- that Catu errors are plain on the face of the record
and thus reviewable on direct appeal.  The Court did not
foreclose any other avenue of review, or limit the reach of Catu.
Indeed, in People v Hill (9 NY3d 189, 190 [2007]), the Court
applied Catu to a defendant's CPL 440.10 post-judgment challenge
to his 2002 conviction.

1998, ch 1 [Jenna's Law]).  The Legislature would not have needed to reach back to 1998 in order to "avoid the need for pleas to be vacated" (Governor's Approval Mem., Bill Jacket, L 2008, ch 141 at 5-6, 2008 NY Legis Ann at 106), if Catu applied only prospectively.

The decision applying Catu retroactively is quite limited and would affect a narrow class of individuals.  Those potentially affected are defendants who completed PRS before resentencing, and who commit another crime that places them at risk for sentence enhancement. Put another way, the class includes only defendants who: 1) were convicted and sentenced after 1997 but before 2005, and who were not advised of the mandatory PRS portion of the sentence; 2) were released from prison before 2008, did not have their convictions cured by Penal Law § 70.85, and served the mandatory PRS; and 3) committed a new offense that puts them at risk for sentence enhancement.[3]

Apart from the other legal reasons I have discussed, it is inherently unfair to permit sentencing enhancement for this group of defendants because it would mean "the accused in effect

---

[3] Since the issue before us involves defendants who are repeat offenders it is worth noting that the State's recidivism rate has been steadily declining since 2001, and hit a record low in 2013, with only 9% of ex-offenders released from prison in 2010 being incarcerated for a new crime in the years that followed (Press Release, Dep't of Corr. & Community Supervision, Return Date for Parolees Committing New Felony Crimes Hits Historic Lows [Nov. 24, 2014], http://www.doccs.ny.gov/PressRel/ 2014/Recidivism_Rates_2010.pdf).

suffers anew from the deprivation" of due process which infected

the prior conviction (<u>Burgett</u>, 389 US at 115).  Such result

undermines our constitutional principles and the holding of <u>Catu</u>.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>For Each Case:</u>  Order reversed, the resentence vacated and the
original sentence reinstated.  Opinion by Judge Pigott.  Judges
Abdus-Salaam, Stein, Fahey and Garcia concur.  Chief Judge
DiFiore concurs in result in a separate concurring opinion.
Judge Rivera dissents and votes to affirm in an opinion.


Decided November 1, 2016